**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1725
_____

ELEANOR ABRAHAM, et al.

v.

ST. CROIX RENAISSANCE GROUP, L.L.L.P.,
Appellant

On Appeal from the District Court
of the Virgin Islands
District Court No. 1-12-cv-00011
District Judge: The Honorable Harvey Bartle, III

Argued April 16, 2013

Before: AMBRO, SMITH, and CHAGARES,
*Circuit Judges*

(Filed: May 17, 2013)


Leah M. Nicholls, Esq.    [ARGUED]
Public Justice

1825 K Street, N.W.
Suite 200
Washington, DC 20006

*Counsel for Appellees*

Carl J. Hartmann, III, Esq.       [ARGUED]
Unit L-6
5000 Estate Coakley Bay
Christiansted, St Croix, VI  00820

Joel H. Holt,  Esq.
Law Offices of Joel H. Holt
2132 Company Street, Suite 2
Christiansted, VI  00820

*Counsel for Appellant*

_____

OPINION

_____

SMITH, *Circuit Judge.*

The St. Croix Renaissance Group, L.L.L.P. (SCRG) sought leave under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1453(c)(1), to appeal an order of the District Court of the Virgin Islands remanding a civil action to the Superior Court of the Virgin Islands.

2

We granted SCRG's request.  Because we conclude that the civil action here is not a removable "mass action" under CAFA, we will affirm the order of the District Court.

I.

In early 2012, "[m]ore than 500 individual plaintiffs" sued SCRG in the Superior Court of the Virgin Islands.  On February 2, 2012, SCRG removed the civil action to the District Court of the Virgin Islands.  SCRG, which was the only named defendant in the action, asserted that the civil action was a "mass action" under CAFA, making it removable under 28 U.S.C. §§ 1332(d)(11)(A) and 1453(b).[1]   Thereafter, 459

---

[1] CAFA defines a "mass action" as

> any civil action (except a civil action within the scope of section 1711(2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).

28 U.S.C. § 1332(d)(11)(B)(i).  Section 1711(2) defines "class action" as any civil action filed under Federal Rule

plaintiffs filed a first amended complaint (referred to for simplicity's sake as "the complaint").[2] Most of the 459

_____

of Civil Procedure 23 or a state statute or rule authorizing a representative action. 28 U.S.C. § 1711(2). Unlike a class action, a mass action has no representative or absent members because all plaintiffs in a mass action are named in the complaint and propose a joint trial of their claims. A mass action is more akin to an opt-in than it is to a class action. *See, e.g.*, 29 U.S.C. § 216(b) (establishing opt-in requirement for Fair Labor Standards Act claims).

[2] We recognize that "[f]or jurisdictional purposes, our inquiry is limited to examining the case 'as of the time it was filed in state court.'" *Std. Fire Ins. Co. v. Knowles*, __ U.S. __, 133 S. Ct. 1345, 1349 (2013) (quoting *Wis. Dep't of Corr. v. Schacht,* 524 U.S. 381, 390 (1998)). This would necessitate reviewing the initial complaint filed in the Superior Court. That complaint is not in the record that the parties have submitted. It was, however, part of the record submitted with the petition for permission to appeal. Our review indicates that the allegations of the original complaint are substantively the same as the first amended complaint. We have not attempted to further clarify the nature of the amendments at this late stage for several reasons. First, this is an expedited appeal under 28 U.S.C. § 1453(c)(2) that must be resolved within sixty days of the date the notice of appeal was filed, unless "for good cause shown and in the

4

plaintiffs were citizens of the United States Virgin Islands. Several plaintiffs, however, were citizens of various states.

SCRG purchased a former alumina refinery on the south shore of St. Croix in 2002. The plaintiffs alleged that "[f]or about thirty years, an alumina refinery located near thousands of homes on the south shore of the island of St. Croix was owned and/or operated by a number of entities." According to the complaint, the "facility refined a red ore called bauxite into alumina, creating enormous mounds of the by-product, bauxite residue, red mud, or red dust."

> From the beginning of the alumina refinery's operations, hazardous materials, including chlorine, fluoride, TDS, aluminum, arsenic, molybdenum, selenium, as well as coal dust and other particulates were buried in the red mud, and the red mud was stored outdoors in open piles that at

interests of justice," an extension of no more than ten days is granted, *id.* § 1453(c)(3)(B). Second, it appears from the record that the amendments to the original complaint were not substantive in nature and neither party contends otherwise. Finally, the issue before us is legal in nature.

5

times were as high as approximately 120 feet and covered up to 190 acres of land.

In addition to these hazardous materials, friable asbestos was present. All of the substances described were dispersed by wind and disseminated as a result of erosion.

According to the plaintiffs, SCRG purchased the refinery site knowing that the loose bauxite and piles of red mud "had the propensity for particulate dispersion when exposed to wind" that would be "inhaled by [p]laintiffs, deposited onto [p]laintiffs' persons, and real and personal properties, and deposited into the cisterns that are the primary source of potable water for many [p]laintiffs." Yet SCRG "did nothing to abate it, and instead, allowed the series of the continuous transactions to occur like an ongoing chemical spill." SCRG "failed to take proper measures to control those emissions[.]" With regard to the friable asbestos, the plaintiffs alleged that SCRG discovered its presence, concealed its existence, and did nothing to remove it from the premises. The plaintiffs averred that the improper maintenance of the facility, inadequate storage and containment of the various hazardous substances, as well as failure to remediate the premises, caused them to sustain physical injuries, mental anguish, pain and suffering, medical expenses, damage to their property and possessions, loss of income and the capacity to earn income, and loss of the enjoyment of life.

The plaintiffs asserted six causes of action against SCRG:

- Count I: Abnormally Dangerous Condition
- Count II: Public Nuisance
- Count III: Private Nuisance
- Count IV: Intentional Infliction of Emotional Distress
- Count V: Negligent Infliction of Emotional Distress
- Count VI: Negligence.[3]

In addition to money damages, the plaintiffs sought injunctive relief to end the ongoing release of hazardous substances and to remediate the property.

In October of 2012, the plaintiffs moved to remand their civil action to the Superior Court, claiming that the District Court lacked federal subject-matter jurisdiction. The plaintiffs asserted that the removal had been improper because § 1332(d)(11)(B)(ii)(I) excluded their action from the definition of "mass action." This section of CAFA excludes from "mass action[s]"

---

[3] A seventh count is denominated "Punitive Damages." This, however, is not a freestanding cause of action.

> any civil action in which – (I) all of the
> claims in the action arise from an event or
> occurrence in the State in which the action
> was filed, and that allegedly resulted in
> injuries in that State or in States contiguous
> to that State.[4]

28 U.S.C. § 1332(d)(11)(B)(ii)(I). From the plaintiffs' perspective, their civil action satisfied the criteria for this exclusion because "every operative incident occurred in St. Croix and caused injury and damages to the [p]laintiffs' persons and property in St. Croix." Each plaintiff's claim arose "from an event or occurrence in St. Croix" that happened "at a single location, the alumina refinery." In addition, the plaintiffs argued that their civil action had been improvidently removed because it qualified as a uniquely local controversy excepted from removal under § 1332(d)(4)(A) or (B).

SCRG opposed the motion to remand. It argued that the plaintiffs had interpreted the statute to exclude from mass actions claims that arise in "one location" instead of as a result of "an event or occurrence" as set forth in the statute. 28 U.S.C. § 1332(d)(11)(B)(ii)(I). SCRG asserted that the exclusion for "an event or

---

[4] Section 1332(e) specifies that the "word 'States,' as used in this section includes the Territories[.]" 28 U.S.C. § 1332(e).

8

occurrence" did not apply because it requires a single incident and the plaintiffs' complaint alleged that "there were multiple events and occurrences over many years." It emphasized that the exclusion "requires that to avoid removal there had to have been just 'an event or occurrence'—a 'single' event or occurrence."

On December 7, 2012, the District Court granted the plaintiffs' motion to remand this action to the Superior Court of the Virgin Islands. *Abraham v. St. Croix Renaissance Grp., L.L.L.P.,* No. 12-11, 2012 WL 6098502 (D.V.I. Dec. 7, 2012). The District Court considered several district court decisions that addressed whether an action qualified as a mass action. It noted that the plaintiffs' complaint alleged "continuing environmental damage," and cited a statement from a Senate Report that the purpose of the "event or occurrence" exclusion was "'to allow cases involving environmental torts such as a chemical spill to remain in state court.'" *Id.* at *3 (quoting S. Rep. 109-14, at 44 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 47 (2005)). The Court reasoned that

> [t]he word *event* . . . is not always confined to a discrete happening that occurs over a short time span such as a fire, explosion, hurricane or chemical spill. For example, one can speak of the Civil War as a defining event in American history, even though it

9

took place over a four year period and involved many battles.

*Id.* The Court then declared that

> an *event,* as used in CAFA, encompasses a continuing tort which results in a regular or continuous release of toxic or hazardous chemicals, as allegedly is occurring here, and where there is no superseding occurrence or significant interruption that breaks the chain of causation. A very narrow interpretation of the word *event* as advocated by SCRG would undermine the intent of Congress to allow the state or territorial courts to adjudicate claims involving truly localized environmental torts with localized injuries. We see no reason to distinguish between a discrete happening, such as a chemical spill causing immediate environmental damage, and one of a continuing nature, such as is at issue here. The allegations in the amended complaint clearly fit within the meaning of an *event* as found in CAFA.

> The plaintiffs' amended complaint does not qualify as a mass action under 28 U.S.C.§ 1332(d)(11)(B)(ii)(I) because all the claims arise from an event or occurrence,

10

that is, the continuous release of toxic substances from a single facility located in the Virgin Islands, where the resulting injuries are confined to the Virgin Islands.

*Id.* at \*3-4.

Under 28 U.S.C. § 1453(c)(1), a party aggrieved by a district court's ruling on a motion to remand may seek permission to appeal if the application is made "not more than 10 days after entry of the order." SCRG filed a timely petition. We granted the petition on March 14, 2013.

## II.

The District Court exercised jurisdiction under 28 U.S.C. §§ 1332(d)(11)(A) and 1453(b). We granted leave to appeal under 28 U.S.C. §§ 1332(d)(11)(A) and 1453(c)(1).

Under CAFA, § 1453(b) provides for the removal to federal district courts of class actions as defined in § 1332(d)(1). 28 U.S.C. § 1453(b). Consistent with federal practice, once an action has been removed under CAFA, the plaintiff may move to remand. *Id.* § 1453(c) (applying 28 U.S.C. § 1447, which governs procedures after removal, to removal of class actions). Under traditional federal practice, an order remanding a case to

11

state court is not reviewable. 28 U.S.C. § 1447(d). CAFA, however, diverges from traditional federal practice by providing for discretionary appellate review of "an order of a district court granting or denying a motion to remand a *class action* to the State court from which it was removed." 28 U.S.C. § 1453(c)(1) (emphasis added).

Plaintiffs contend that we lack appellate jurisdiction under § 1453. They assert that the provision in CAFA which permits an appeal of a remand order applies to only "class actions—not mass actions." They point out that § 1453 refers to *class actions* alone and does not use the term "mass actions." *See* 28 U.S.C. § 1453(a) (specifying that for purposes of § 1453, "the term[] . . . 'class action' . . . shall have the meaning[] given such term[] under section 1332(d)(1)"). According to plaintiffs, because their civil action does not meet the definition of a removable class action under § 1332(d)(1), we lack appellate jurisdiction.

Plaintiffs' argument fails to acknowledge a critical "deemer" provision in CAFA. While § 1453 makes only certain "class actions" removable and does not use the term "mass action," § 1332(d)(11)(A) states that "[f]or purposes of this subsection [(1332(d)] and section 1453, a mass action shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs." 28 U.S.C. § 1332(d)(11)(A). The plain text of this provision

12

makes § 1453's treatment of "class actions" equally applicable to "mass actions." 28 U.S.C. § 1332(d)(11)(A). *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1195 (11th Cir. 2007) (noting that the "plain language" of § 1332(d)(11)(A) "makes it clear that any 'mass action' is also considered a 'class action' for the purposes of CAFA's removal provisions"). And nothing limits that deeming provision to subsection (b), which permits removal. Rather, § 1453's applicability to "mass actions" includes subsection (c), which establishes our discretionary appellate jurisdiction over remand orders. Accordingly, we have appellate jurisdiction under § 1453(c)(1).

## III.

The issue in this case is one of statutory interpretation.[5] We must determine the meaning of the

---

[5] We review issues of statutory interpretation de novo. *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 151 (3d Cir. 2009). De novo review also applies because whether the plaintiffs' civil action fits within the mass-action exclusion in § 1332(d)(11)(B)(ii)(I) concerns the subject-matter jurisdiction of the District Court. *Id.* The District Court's application of law to the factual averments of the complaint is also subject to de novo review. *See In re Sch. Asbestos Litig.*, 56 F.3d 515, 519 (3d Cir. 1995).

phrase "an event or occurrence" as it appears in the mass-action exclusion.  The exclusion provides:

> (ii) . . . the term "mass action" shall not include any civil action in which – (I) all of the claims in the action arise from *an event or occurrence* in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State[.]"

28 U.S.C. § 1332(d)(11)(B)(ii)(I) (emphasis added).  "As in all statutory construction cases, we begin with the language of the statute.  The first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)).  "When the meaning of statutory text is plain, our inquiry is at an end." *Roth v. Norfalco, L.L.C.*, 651 F.3d 367, 379 (3d Cir. 2011).

If the text is "reasonably susceptible of different interpretations," it may be ambiguous. *Edwards v. A.H. Cornell and Son, Inc.*, 610 F.3d 217, 222 (3d Cir. 2010) (internal quotation marks and citation omitted).  As the Supreme Court instructed in *AT&T Mobility, L.L.C. v. Concepcion*, __ U.S. __, 131 S. Ct. 1740 (2011), when a statute appears to be ambiguous, we must

14

> look to other portions of the [Act because s]tatutory interpretation focuses on "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Sav. Assn. of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988).

*AT&T Mobility*, 131 S. Ct. at 1754. Only if we conclude that a statute is ambiguous, after consideration of the statutory scheme, may we then consider the legislative history or other extrinsic material—and then, only if it "shed[s] a *reliable* light on the enacting Legislature's understanding of otherwise ambiguous terms." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) (emphasis added).

SCRG relies heavily on the article "an," which precedes "event or occurrence," and the singular nature of that article. In SCRG's view, this "an" before "event or occurrence" means that the exclusion is not applicable if the complaint alleges injuries that are not the result of a single, discrete incident. In SCRG's view, this means

15

that the exclusion does not apply to the plaintiffs' claims, which are based on a series of incidents resulting in their continued exposure to the hazardous substances. These incidents include the erosion of the red mud containing the various hazardous substances, the dispersion by wind of the same, and the improper storage of and the failure to remove all of these substances from the premises.

SCRG's argument is not completely devoid of merit. Its contention that this statutory language refers to a single incident is semantically consistent with Congress's decision to use the singular form of the words "event" or "occurrence" in the exclusion. *See Dunn v. Endoscopy Ctr. of S. Nev.*, No. 2:11-CV-560, 2011 WL 5509004, at *2 (D. Nev. Nov. 7, 2011) (noting that the statute did not state "events and occurrences," and that the "use of the singular in the statutory language is important and sufficient").

But SCRG's reliance on the article "an" does not end the inquiry. We must determine what the phrase "event or occurrence" means. "In the absence of a statutory definition" in the CAFA, we are bound to give the words used their "'ordinary meaning.'" *United States v. Diallo*, 575 F.3d 252, 256-57 (3d Cir. 2009) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990) (omitting internal quotation marks and citation)); *see also Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995) ("When terms used in a statute are undefined, we give them their ordinary meaning."); *FDIC v. Meyer*, 510

16

U.S. 471, 476 (1994) ("In the absence of such a definition, we construe the statutory term in accordance with its ordinary or natural meaning."). In common parlance, neither the term "event" nor "occurrence" is used solely to refer to a specific incident that can be definitively limited to an ascertainable period of minutes, hours, or days.[6]

As the District Court explained, the "word *event* in our view is not always confined to a discrete happening that occurs over a short time span such as a fire, explosion, hurricane, or chemical spill. For example, one can speak of the Civil War as a defining event in

---

[6] The word "event" is defined, *inter alia*, as "something that takes place, especially a significant occurrence." The American Heritage Dictionary of the English Language 615 (5th ed. 2011). *See also* Merriam-Webster's Collegiate Dictionary 433 (11th ed. 2003) (including among its definitions of "event" "something that happens," "occurrence," and "a noteworthy happening"). The definition of "occurrence," not surprisingly, is "the action, fact, or instance of occurring . . . 'something that takes place; an event or incident." The American Heritage Dictionary of the English Language 1219 (5th ed. 2011); Merriam-Webster's Collegiate Dictionary 858 (11th ed. 2003 (defining "occurrence" as "something that occurs . . . the action or instance of occurring")).

17

American history, even though it took place over a four-year period and involved many battles." *Abraham*, 2012 WL 6098502, at * 3. The Court's construction of the word is consistent with the word's common usage. Important events in history are not always limited to discrete incidents that happened at a specific and precise moment in time.

As further support for this construction, we note that the plain text of the exclusion and the statutory scheme do not delimit the words "event or occurrence" to a specific incident with a fixed duration of time. Because the words "event" and "occurrence" do not commonly or necessarily refer in every instance to what transpired at an isolated moment in time, there is no reason for us to conclude that Congress intended to limit the phrase "event or occurrence" in § 1332(d)(11)(B)(ii)(I) in this fashion. Accordingly, where the record demonstrates circumstances that share some commonality and persist over a period of time, these can constitute "an event or occurrence" for purposes of the exclusion in § 1332(d)(11)(B)(ii)(I).

In short, treating a continuing set of circumstances collectively as an "event or occurrence" for purposes of the mass-action exclusion is consistent with the ordinary usage of these words, which do not necessarily have a temporal limitation. Giving the words "event" or "occurrence" their ordinary meaning is not at odds with the purpose of the statutory scheme of CAFA. Congress

clearly contemplated that some mass actions are better suited to adjudication by the state courts in which they originated. This intent is evident in both the "event or occurrence" exclusion for mass actions, as well as the local-controversy and home-state exceptions in § 1332(d)(4)(A) and (B) for class actions. *See Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 149 (3d Cir. 2009) (referring to § 1332(d)(4)(A) as the "local controversy exception" and subsection (B) as the "home-state" exception). These provisions assure that aggregate actions with substantial ties to a particular state remain in the courts of that state.

The local-controversy and home-state exceptions for class actions in § 1332(d)(4) and the "event or occurrence" exclusion for mass actions, however, are different creatures entirely. Indeed, in light of the statutory structure of CAFA, the exceptions and the exclusion have to be different because a "mass action," to be removable, must meet the provisions of § 1332(d)(2) through (10). 28 U.S.C. § 1332(d)(11)(A). This means that to be removable a mass action must present something other than a uniquely local controversy that may not be removed under either the local-controversy or home-state exception in § 1332(d)(4)(A) and (B), respectively. If the mass action complaint pleads neither a local-controversy nor a home-state cause of action under subsection (d)(4), it may be removed unless the

19

"event or occurrence" exclusion in subsection (d)(11)(B)(ii)(I) applies.

It is notable that the local-controversy exception contains broad language instructing a district court to decline to exercise jurisdiction where the "principal injuries resulting from *the alleged conduct or any related conduct . . .* were incurred in the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A)(i)(III) (emphasis added). The use of this broad language in the local-controversy exception for class actions and not in the mass-action exclusion might suggest that Congress intended to limit the mass-action exclusion to claims arising from a discrete incident. *See Duncan v. Walker*, 533 U.S. 167, 173 (2001) (observing that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion" (internal quotation marks and citations omitted)). Because the local-controversy class action exception and the "event or occurrence" exclusion for mass actions are not the same, the broad language in the local-controversy exception in § 1332(d)(4)(A) for class actions does not control our interpretation of the phrase "event or occurrence" in the mass-action exclusion in § 1332(d)(11)(B)(ii)(I). Consequently, the statutory scheme of CAFA does not require limiting the

construction of "event or occurrence" to something that happened at a discrete moment in time.

We conclude that the District Court did not err in its interpretation of the "event or occurrence" exclusion in § 1332(d)(11)(B)(ii)(I). Our broad reading of the words "event" and "occurrence" is consistent with their ordinary usage.[7] Further, such a reading does not thwart Congress's intent, which recognized that some aggregate actions are inherently local in nature and better suited to adjudication by a State court. Accordingly, there is no reason to consider the legislative history of the CAFA to interpret the phrase "event or occurrence" in the mass-action exclusion. *Morgan v. Gay*, 471 F.3d 469, 473 (3d

---

[7] The ordinary meaning of the words "event" and "occurrence" do not easily lend themselves to fashioning a precise definition that can be applied to all litigation under CAFA. It is sufficient for purposes of this appeal to determine that the phrase "event or occurrence" in the exclusion is not as temporally limited as SCRG contends. We note, however, that the exclusion contains other limitations, demanding a commonality of the claims and requiring a substantial link with the forum state. 28 U.S.C. § 1332(d)(11)(B)(ii)(I) (providing that (1) "all" of the claims must arise from the event; (2) the event must happen in the state in which the action was filed; and (3) the plaintiffs' injuries must have "allegedly resulted . . . in that state").

21

Cir. 2006) (noting that we "need not look to legislative history at all when the text of the statute is unambiguous").[8]

In light of our determination that the words "event" or "occurrence" in § 1332(d)(11)(B)(ii)(I) should be given their ordinary meaning, we turn to whether the plaintiffs' complaint falls within this exclusion for mass actions.[9] We conclude that the complaint sufficiently

---

[8] Although we need not consider legislative history, we doubt that the Senate Report would aid us in any way in interpreting this exclusion in CAFA. The Senate Report was issued after CAFA was enacted. *See Bruesewitz v. Wyeth, L.L.C.*, __ U.S. __ 131 S. Ct. 1068, 1081 (2011) (noting that "[p]ost-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation"). In addition, because either party in this controversy can cite the Senate Report as authority for their respective interpretations, the Senate Report sheds little light on Congress's true intent. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) (cautioning that legislative history has a role in statutory interpretation only if it "shed[s] a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms," and instructing that legislative history is not a reliable source if it is contradictory).

[9] We recognize that the District Court concluded that the word "event" in § 1332(d)(11)(B)(ii)(I) included the

22

alleges that all of the plaintiffs' claims arise from "an event or occurrence" in the Virgin Islands where the action was filed and that allegedly resulted in injuries there.

---

"continuous release of toxic or hazardous chemicals, as allegedly is occurring here, and where there is no *superseding* occurrence." *Abraham*, 2012 WL 6098502, at *3 (emphasis added). In *Allen v. Monsanto Co.*, No. 3:09cv471, 2010 WL 8752873, at *10 (N.D. Fla. Feb. 1, 2010), the District Court used the term "*interceding*" in its analysis of whether the circumstances constituted "an event or occurrence" for purposes of the exclusion in § 1332(d)(11)(B)(ii)(I). *Id.* (emphasis added). It is clear from the text and structure of the CAFA that Congress drafted the statute with an awareness of the various types of aggregate action, including class actions, mass actions, and mass torts. *See generally* 28 U.S.C. § 1332(d)(11) (defining "class action" for purposes of diversity jurisdiction); *id.* § 1332(d)(11) (establishing the "mass action" as a non-class aggregate action and distinguishing it from mass tort actions that may be the subject of multidistrict litigation under 28 U.S.C. § 1407). Yet Congress neither used the word "tort" in the mass action exclusion nor the terms "interceding" or "superseding." Because giving the terms in the exclusion their ordinary meaning does not create a result that is at odds with Congress's intent to keep some actions in state court, we see no reason to utilize these terms of art in our analysis.

23

The complaint alleges circumstances that persisted over a fixed period of time–specifically, from 2002, when SCRG acquired the former alumina refinery, to the present. These circumstances included: (1) the presence throughout the former refinery site of the red mud and the various hazardous substances that were buried therein; (2) the plaintiffs' continual exposure to the red mud and its particulates as a result of erosion by wind and water; and (3) the persistent failure of SCRG to contain or abate the hazardous substances and to remediate the premises. In short, the condition of the site during the period of SCRG's ownership provided a source for the ongoing emission of the red mud and the hazardous substances and the subsequent dispersion onto the plaintiffs' persons and their property. We believe that these circumstances, which the District Court characterized as the "continuous release of toxic substances from a single facility located in the Virgin Islands," constituted "an event or occurrence" for purposes of the mass-action exclusion. *Abraham*, 2012 WL 6098502, at *4.

We recognize that multiple substances are alleged to have emanated from SCRG's site. But the complaint does not allow us to isolate a specific substance and trace it to a particular course of action taken by SCRG at a precise point in time. Instead, the complaint alleges that the red mud containing the various hazardous substances was present throughout the site. There are no averments

24

that SCRG removed any of the hazardous substances and thereby heightened the risk of exposure to any particular substance. Nor are there any allegations that SCRG engaged in any manufacturing at the site to increase the emission of any particular substance. There is simply the ongoing emission from the site of the red mud and its hazardous substances. Because we cannot identify separate and discrete incidents causing the emission of the various substances at any precise point in time, we reject SCRG's argument that the plaintiffs' claims arose from multiple events or occurrences.[10]

We agree with the District Court that the complaint was not a removable mass action because "all of the claims in the action arose from an event or occurrence" that happened in the Virgin Islands and that resulted in injuries in the Virgin Islands. Accordingly, the District

---

[10] In addition to the dispersion of red mud, plaintiffs have also alleged that SCRG has failed to prevent the dispersion of friable asbestos. Though these are two distinct hazardous substances, we do not believe this should alter the result. Plaintiffs allege that both substances were present on the same site and have been released into the environment due to SCRG's neglect of that site. This commonality is enough for the release of the two substances to constitute "an event or occurrence" under the statute.

Court appropriately remanded the plaintiffs' action to the Superior Court of the Virgin Islands.[11]

## IV.

In sum, we agree with SCRG that the statute excludes from mass actions those civil actions in which all of the claims arise from a single event or occurrence in the state where the action was filed. But the ordinary meaning of the words "event" and "occurrence" is not always limited to something that happened at a particular moment in time. Indeed, "event" and "occurrence" admit of temporal flexibility. For this reason, we find no error in the District Court's conclusion that the "continuous release" of hazardous substances from SCRG's premises constituted "an event or occurrence" for purposes of the mass-action exclusion in § 1332(d)(11)(B)(ii)(I). We will affirm the District Court's order granting the motion to remand.[12]

---

[11] Because plaintiffs' complaint meets the criteria of the "event or occurrence" exclusion in § 1332(d)(11)(B)(ii)(I), we need not resolve whether the District Court erred by denying their request for discovery regarding SCRG's citizenship.

[12] CAFA requires a court of appeals to "complete all action" on an appeal, "including rendering judgment not later than 60 days after the date on which such appeal was filed." 28 U.S.C. § 1453(c)(2). This means that

26

judgment must be filed no later than May 13, 2013. "[F]or good cause shown and in the interests of justice," we may extend this filing date for ten days. *Id.* § 1453(c)(3)(B). Because compliance with the 60 day deadline would result in an abbreviated circulation period for this precedential opinion, *see* Third Circuit I.O.P. § 5.6, we conclude that good cause exists for an extension and that the ten-day extension is in the interest of justice.