**LAURIE L.A. ABEDNEGO; ANDREA ABRAHAM; AUGUSTINA ABRAHAM; DERRICK ABRAHAM; ELEANO A. ABRAHAM; JESSICA ABRAHAM; et al., Plaintiffs**

**v.**

**ST. CROIX ALUMINA, LLC; GLENCORE INTERNATIONAL AG; ALCOA; GLENCORE, LTD f/k/a CLARENDON, LTD; and CENTURY ALUMINUM COMPANY, Defendants**

Case No. SX-09-CV-571

Superior Court of the Virgin Islands

Division of St. Croix

August 10, 2015

154

155

156

157

BRADY, *Judge*

## MEMORANDUM OPINION

(August 10, 2015)

THIS MATTER is before the Court on a motion filed by 198 former plaintiffs ("Former Plaintiffs"), through their counsel Lee J. Rohn, Esq., requesting relief from an order that the District Court of the Virgin Islands issued dismissing the Former Plaintiffs from this action while it was before that court on removal. St. Croix Renaissance Group LLLP ("SCRG"), a former defendant also dismissed by the same order as the Former Plaintiffs, reappeared on remand to oppose the Former Plaintiffs' motion. Defendants Alcoa, St. Croix Alumina, LLC, and Century Aluminum Company joined SCRG's opposition.

Also pending before the Court are two motions to dismiss filed by the defendants (and related ancillary motions by both parties requesting additional time and leave to exceed page limitations), the plaintiffs' motion to amend the complaint to substitute a personal representative, and finally a motion by counsel for the plaintiffs for leave to withdraw. The first motion to dismiss, filed by St. Croix Alumina, LLC, Alcoa, Inc., and Glencore, Ltd. jointly (hereinafter "Alumina Defendants"), requests dismissal of the complaint due its failure to state a claim for relief as to any individual plaintiff. The Alumina Defendants argue that the complaint — which asserts (after following three amendments) seven different claims on behalf of approximately 2,800 former members of a federal class action lawsuit — is deficient because none of the plaintiffs pleaded any of their claims with particularity as to themselves or as to any of the defendants. The second motion to dismiss, filed by Century Aluminum Company individually, also requests that the complaint be dismissed for failure to state a claim, but — among other grounds — because the statute of limitations has run for all of the plaintiffs. Specifically, Century Aluminum argues that none of the plaintiffs can benefit from equitable tolling principles that would stop the clock on the statute of limitations during the time when the individual plaintiffs were members of the class action lawsuit. The plaintiffs responded in opposition to the Alumina Defendants' motion to dismiss, but have not responded in opposition to Century Aluminum's motion even though they requested additional time and despite responding in opposition to a motion Century Aluminum filed to deem its motion to dismiss unopposed.

The remaining motions were filed by the plaintiffs and by their counsel, respectively. In the one motion, the plaintiffs ask to amend their "mass" complaint for a fourth time, but only to substitute a personal representative for the estate of one plaintiff who passed away. In the other motion, Attorney Rohn seeks leave to withdraw as counsel for two plaintiffs: a father in his individual capacity and as next of friend to his minor son. None of the defendants have opposed either motion.

For the reasons that follow, the Court will grant the Former Plaintiffs' motion for relief and reinstate their claims. By dismissing rather than severing the Former Plaintiffs' claims the District Court was in error because precedent binding on that court directs that claims should be severed, not dismissed, if the statute of limitation may have run. And because the Court will vacate the District Court's order and reinstate the

Former Plaintiffs' claims, the Court must deny without prejudice the Alumina Defendants' motion to dismiss. Joining together more than 2,800 plaintiffs in one complaint was improper and should not have been allowed. But the remedy at this point is not to dismiss their complaint for failure to state claims as a group, but rather to sever the claims of each plaintiff (including the Former Plaintiffs) and order them to refile individual, verified complaints. Additionally, since the Court cannot tell from the current complaint which plaintiffs were formerly members of a federal class action lawsuit, the Court must also deny without prejudice Century Aluminum's motion to dismiss. Finally, the Court will grant the plaintiffs' motion to amend their complaint and their counsel's motion to withdraw. But like all the other approximately 2,800 plaintiffs, both the personal representative and the father (individually and as next of friend) will have to refile individual, verified complaints. Once the individual complaints are refiled, the Court will then create a master case file and docket and consolidate the individual cases under the master docket for further pre-trial proceedings.

## BACKGROUND

Although this action was initially filed in the Superior Court of the Virgin Islands in 2009, litigation over the claims at issue actually began ten years earlier in the District Court of the Virgin Islands when a class was certified in 1999 under the case *Josephat Henry v. St. Croix Alumina, LLC.* Litigation proceeded in the class action for nearly a decade until 2008 when the District Court decertified the class, concluding that "the overwhelming majority of questions . . . including those having to do with liability, cannot be answered on a class-wide basis because they will require individualized answers based on personal circumstances." *Henry v. St. Croix Alumina, LLC,* 1999-cv-0036, 2008 U.S. Dist. LEXIS 43755, *2 (D.V.I. June 3, 2008).

Once the class was decertified, the federal court lost jurisdiction. So former members of the *Henry* class joined together and on December 3, 2009 filed a single, 209-page complaint in the Superior Court of the Virgin Islands. The December 3, 2009 complaint (of which the caption comprises some 70 or so pages with another 130 pages devoted just to listing each party individually) was brought by the same counsel, Lee J. Rohn, Esq., who represented the *Henry* class locally. The complaint named approximately 2,800 plaintiffs, including minor plaintiffs and, as

defendants, named St. Croix Alumina, LLC, Alcoa, Inc., and Glencore, Ltd. (also known as Clarendon, Ltd.). The plaintiffs asserted claims for personal injury and property damage allegedly caused by the former aluminum refinery on St. Croix allowing bauxite and a byproduct of bauxite (often referred to as "red dust") to accumulate on and around the grounds of the refinery. Eventually, the red dust became airborne and, according to the plaintiffs' allegations, was deposited in, on, and around their homes, persons, and personal property. Further damage occurred in 1998 when Hurricane Georges struck St. Croix and caused large quantities of the red dust to be disbursed around the island.

The plaintiffs asserted as count one that that the operation of the aluminum refinery constituted an abnormally dangerous condition for which the defendants should be held strictly liable. In count two they alleged a claim of negligence *per se* for the defendants' failure to follow federal and territorial laws and regulations. In count three they alleged a claim for public nuisance and in court four a claim for private nuisance. Counts five and eight alleged negligence while count six alleged intentional infliction of emotional distress and count seven negligent infliction of emotional distress. And, although mistakenly labeled as count nine, the plaintiffs also asserted a demand for punitive damages. Notably because the complaint does not specify who has which claims, all eight claims are, presumably, asserted by every plaintiff against each of the defendants with each plaintiff seeking damages, including punitive damages, and injunctive relief from every defendant.

A week after filing this action, the plaintiffs, on December 9, 2009, amended their complaint to add St. Croix Renaissance Group LLLP ("SCRG") as a defendant. Other than adding a fourth defendant, the amended complaint (so far as the Court can tell) did not add any additional plaintiffs or assert additional claims for relief. Two months later, on February 16, 2010, Alcoa filed a notice removing this matter to the District Court of the Virgin Islands on the basis that the federal court was the proper forum for "mass action" cases under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Litigation continued in the District Court for more than a year before that court determined that it lacked subject matter jurisdiction and remanded the case back to the Superior Court. What occurred on removal is the focus of the first motion before the Court.

161

While on removal in the District Court, St. Croix Alumina, Alcoa, and Glencore jointly moved to dismiss the plaintiffs' complaint for failure to state a claim or, in the alternative, for a more definite statement. SCRG later joined in their motion to dismiss. In response, the plaintiffs moved for a remand, alleging that the District Court lacked subject-matter jurisdiction because the plaintiffs did not file this action as a class action. Further, they argued that federal jurisdiction does not extend to their case because CAFA excludes cases where all of the claims arose in the same jurisdiction where the injuries occurred and where the lawsuit was filed. In other words, because everything occurred on St. Croix, the federal court did not have authority to hear this lawsuit, the plaintiffs contended.

In response, the Alumina Defendants, later joined by SCRG, opposed remand. They countered that the federal court did have authority to hear this lawsuit because the plaintiffs' claims actually did not arise from the same event or occurrence, but rather from multiple events over the years that the aluminum refinery was operating on St. Croix. The defendants further claimed that not every plaintiff's injury occurred on St. Croix since the complaint named as plaintiffs persons who had left St. Croix. The Alumina Defendants then attached, as an exhibit to their opposition, a declaration issued by SCRG's counsel, Joel H. Holt, Esq., which in turn attached a press release purportedly issued by Attorney Rohn on March 9, 2010, alerting the public that "she filed an individual complaint for each of the 2485 persons who had been part of the class action in the Virgin Islands Superior Court" and would be contacting "[a]ll the victims that were affected and were part of the class action . . . in preparation for the individuals' suit." (Holt Decl., Ex. 1, [Alumina] Defs.' Resp. in Opp'n to Pls.' Mot. to Remand, Apr. 20, 2010, ECF No. 17-1, *Abednego v. St. Croix Alumina, LLC*, 1:10-cv-009 (*"Abednego"*).)

Six days later, the District Court, on April 26, 2010, issued an order *sua sponte*, raising concerns about a press release the plaintiffs' counsel issued regarding "red dust cases." The court ordered Attorney Rohn to file an affidavit listing the date when each plaintiff retained her law firm, whether that plaintiff had agreed verbally or in writing to her representation, and whether Attorney Rohn and her law firm had been retained before she filed the December 3, 2009 complaint in the Superior Court. A hearing was scheduled for May 14, 2010 to address the forthcoming affidavit and matters related to the representation of the plaintiffs.

162

On May 7, 2010, the plaintiffs replied to the defendants' opposition to remand, arguing strenuously in favor of remand and reiterating that the District Court lacked subject-matter jurisdiction because their claims could not satisfy the definition of "mass action" under 28 U.S.C. § 1332(d)(11)(A). Then, four days before the May 14, 2010 hearing, Attorney Rohn filed a response to the April 26, 2010 Order and an affidavit. In her response, Attorney Rohn objected to the order, implying that it was not proper for the court to have placed itself in a quasi-adversarial role by questioning her authority to represent the plaintiffs, a role that typically requires " 'the party who questions the authority of the attorney,' " to " 'state facts showing, or tending to show, that the attorney did not possess the authority which [s]he exercised.' " (Rohn Resp. 2, May 10, 2010, ECF No. 30-1, *Abednego* (quoting *People v. Mariposa Cty*, 39 Cal. 683, 685 (1870)).) Then, in her affidavit, Attorney Rohn stated that she had reviewed her files and determined that of the 2,895 persons named in the complaint, 44 were inadvertently named twice and, once removed, would reduce the total number of plaintiffs to 2,851. From that number, 57 plaintiffs are minors whose parents or legal guardians agreed to retain her. Another 162 plaintiffs were minors when their parents or legal guardians retained her but — because they have since reached adulthood — they will now have to execute retainer agreements individually. Attorney Rohn further identified another 219 persons named as plaintiffs because they had signed up to join the suit, but for whom she could not find retainer agreements.

The day before the hearing, May 13, 2010, Attorney Rohn supplemented her May 10, 2010 response, further detailing her efforts at "investigating and attempting to contact those persons . . . [who] got on the 'signed up' list" to determine "what households they belonged to at the time retainers were signed." (Rohn Supp. Resp. 6, May 13, 2010, ECF No. 33-1, *Abednego*.) She also reiterated her objection to the District Court's inquiries into her authority, explaining that because she was previously appointed in *Henry* as class counsel in 1999 she believed that she owed all class members — including the 219 plaintiffs for whom she could not locate retainer agreements — a continuing duty to protect their rights and was obligated to name them all in the December 3, 2009 complaint as former class members.

At the May 14, 2010 hearing, the District Court opened by quoting from *Pueblo of Santa Rosa v. Fall*, 273 U.S. 315, 47 S. Ct. 361, 71 L. Ed.

163

658 (1927) and explaining that courts have the power to require attorneys who appear before them to show that they have the authority to represent the persons they claim to represent. Attorney Rohn then inquired whether, before reaching that issue, the court had "to decide the remand motion first?" (Hr'g Tr. 6:20-21, May 14, 2010, ECF No. 48, *Abednego*.) Believing that *Pueblo of Santa Rosa* and the rules of professional responsibility required otherwise, the District Court declined to decide the motion to remand first. The hearing then proceeded with Attorney Rohn explaining how her law firm was retained and what the circumstances were that resulted in her having written retainer agreements for some, but not all, of the persons named as plaintiffs in the complaint. She reiterated that she was one of the attorneys for the class in *Henry* before it was decertified and believed that she owed all former class members a continuing duty to protect their claims against the defendants. She explained that "[f]rom the time of decertification until the time we filed this lawsuit, we have been working and had hired outside people to work on trying to get this as accurate as possible, but the statute of limitations began to [run]. And to be careful about the statute of limitations, we were forced to file with the information that we have." *Id.* at 35:3-9. She then requested sixty days to file an amended complaint that would address the concerns the court had raised in its April 26, 2010 order. The following exchange between the court and Attorney Rohn then occurred:

> THE COURT: I think you — I haven't checked the rules lately, but don't you have to provide addresses for the parties?
>
> MS. ROHN: It was filed in Superior Court, and, no, I didn't have to.
>
> THE COURT: It's here now.
>
> MS. ROHN: Well, Your honor, we do not believe it's properly here.
>
> THE COURT: That may be, but we are going — I just, think Ms. Rohn, it's in your best interest too to have it accurate.
>
> MS. ROHN: I am not disputing that.
>
> THE COURT: It's in everybody's interest. It's not me versus you versus defendants in this regard. We need to know who the players are, who the parties are.
>
> MS. ROHN: Your Honor, I am not disputing that. I am not disputing that. I was only commenting on the fact that it is here, this is a local matter involving local defendants, and it belongs where it started.

THE COURT: You may be right, but we are going to get this straightened out first.

MS. ROHN: I have no problem with that.

THE COURT: I think it's in every body's interest and in the interest of justice to get it straightened out why [sic] we raise it here and get it done.

MS. ROHN: It has to be done sooner than later and might as well be sooner.

THE COURT: We just better do it.

*Id.* at 36:15-37:18. The court then granted the request to file an amended complaint, explaining that "[o]nce we get this all straightened out, then we can move on to the motion on remand, which I have before me, but I think we need to get this resolved first." *Id.* at 39:20-23.

Following the May 14, 2010 hearing, the District Court let Attorney Rohn submit under seal copies of the retainer agreements the court ordered her to file. That prompted SCRG to respond by moving to have some or all of the retainer agreements unsealed "so that counsel for SCRG can review them in order to understand whether additional relief should be sought from th[e c]ourt on behalf of SCRG." (SCRG Mem. in Supp. of Mot. to Unseal Retainer Agmts & Related Materials Filed Under Seal 1, May 25, 2010, ECF No. 42, *Abednego*.) Specifically, SCRG claimed that Attorney Rohn's representations concerning when and how she was retained raised questions as to whether she was authorized to sue SCRG, a partnership that did not exist in 1999 when the *Henry* class was certified. Alcoa and St. Croix Alumina likewise moved to have the retainer agreements unsealed. The plaintiffs responded in opposition, claiming that the request was "nothing more than a thinly-veiled attempt to raise issues more properly brought via a motion for dismissal and/or summary judgment rather than in proceedings regarding the representation of Plaintiffs in this case." (Pls.' Resp & Mem. in Opp'n 1, June 11, 2010, ECF No. 50, *Abednego*.) The plaintiffs further argued that the defendants had also not shown why the protections of the attorney-client privilege and the work-product doctrine should be set aside and had not shown any consideration for confidential information like social security numbers that would be publically available once unsealed.

Resolving the motions to unseal, the District Court first rejected the plaintiffs' concerns over privilege, explaining that "retainer agreements

between plaintiffs and counsel are not subject to the attorney-client privilege." *Abednego v. Alcoa, Inc.*, 1:10-cv-009, 2010 U.S. Dist. LEXIS 70751, *6 (D.V.I. July 14, 2010) (unreported). But the court did credit their privacy concerns, noting that "[o]nce the documents are unsealed, this information would not only be available to the defendants but also to the public." *Id.* 2010 U.S. Dist. LEXIS 70751, at *7. So to protect any sensitive or confidential information the court denied the motion to unseal as to the retainer agreements already filed, but ordered Attorney Rohn to resubmit the agreements with private information, such as social security numbers and telephone numbers, redacted.

Once the plaintiffs refiled redacted retainer agreements, SCRG renewed its objection to being named as a defendant. In its response in opposition to the plaintiffs' motion for leave to file a second amended complaint, SCRG first argued that the amendments the plaintiffs proposed did not fully satisfy the concerns regarding Attorney Rohn's lack of authority. Specifically, SCRG identified 198 plaintiffs who did not have retainer agreements with Attorney Rohn but who were still named in the proposed second amended complaint as well as minor plaintiffs not appropriately designated. SCRG then requested — in addition to asking that the plaintiffs be ordered to resubmit their proposed amended complaint and name only those persons who had retainer agreements — that the court order the plaintiffs to remove SCRG as a defendant from subsequent amendments. The basis for SCRG asking to be removed from the complaint — a request it acknowledged was premature — was because none of the retainer agreements Attorney Rohn filed showed that she was authorized to sue SCRG.

In an order issued October 4, 2010, the District Court granted the plaintiffs' motion to amend and — because a second amendment to the complaint had been allowed — denied as moot the defendants' motions to dismiss the first amended complaint. The court also denied as moot the plaintiffs' motion to remand the first-amended complaint for lack of subject-matter jurisdiction. The response to that order was more motions.

On October 25, 2010, SCRG renewed its opposition to the second amended complaint by filing a motion pursuant to Federal Rule of Civil Procedure 17(c) and 21. Although Rule 21, which governs misjoinder of parties, expressly states that "[m]isjoinder is not a ground for dismissing an action," FED. R. CIV. P. 21, SCRG nonetheless moved to have the claims of the 198 plaintiffs for whom Attorney Rohn did not produce

166

retainer agreements — not severed as the rule provides — but instead dismissed. SCRG further requested that all of the plaintiffs' claims against it be dropped pursuant to Rule 21. Additionally, SCRG moved the court to order the plaintiffs, pursuant to Federal Rule of Civil Procedure 17(c), to further amend their complaint to identify guardians for minor plaintiffs. Lastly, because the second amended complaint failed to comply with the court's order to correct the errors in the complaint, SCRG moved for an order directing the plaintiffs to remove duplicate names and to correct certain names that had been misspelled.

Like SCRG, the plaintiffs also renewed their earlier motion by filing, on November 3, 2010, another motion to remand for lack of subject-matter jurisdiction, reasserting the same arguments the court did not consider on the merits in its October 4, 2010 order. Additionally, the plaintiffs reached out to SCRG to request additional time to file their response in opposition to SCRG's October 25, 2010 motion. SCRG stipulated to the request, agreeing to give the plaintiffs until November 17, 2010 to file their opposition. However, a day earlier, on November 16, 2010, the District Court issued an order granting as unopposed SCRG's October 25, 2010 motion, dismissing the claims of 198 plaintiffs for whom Attorney Rohn did not have retainer agreements, dismissing SCRG entirely as a defendant, and directing that the plaintiffs file a revised amended complaint that removed SCRG as a defendant and removed certain duplicate names and corrected other misspelled names. The court further ordered that all minors be identified in the revised amended complaint by guardians *ad litem*. In a second order issued the same day, the court extended the briefing deadlines on the plaintiffs' motion to remand for lack of subject-matter jurisdiction.

The next day, November 17, 2010, the plaintiffs moved for reconsideration and filed the stipulation in which SCRG agreed to allow them the two-day extension to file their opposition to the SCRG's Rule 17 and Rule 21 motion. In their reconsideration motion, the plaintiffs argued that the court erred by ruling before their response was due. They believed, "because SCRG sought a dismissal as a relief," that their response was due twenty days later pursuant to Local Rule of Civil Procedure 7.1. (Pls.' Mot. to Reconsider Order Granting Rule 17/21 Mot. 2, Nov. 17, 2010, ECF No. 102, *Abednego*.) Additionally, the plaintiffs attached to their reconsideration motion the response in opposition that they would have filed if the court had not granted SCRG's motion before

their response time passed. Specifically, the plaintiffs argued that "Rule 21 is not the proper legal mechanism for resolving SCRG's allegation that Plaintiffs' counsel lacks the authority to file . . . claims against SCRG" because "SCRG has not made the requisite showing that any of these parties has been *misjoined*." (Pls.' Opp'n to SCRG's Rule 17 & 21 Mot., Nov. 17, 2010, ECF No. 102-3, *Abednego*.) Predictably, SCRG responded, but not in opposition to reconsideration. SCRG took no position on the merits of the plaintiffs' motion. Instead, SCRG argued that Local Rule of Civil Procedure 7.1 clearly provides that the plaintiffs had fourteen days to respond, not twenty-one days as the plaintiffs contended. Local "Rule 7 makes clear," SCRG asserted, "that responses to motions other than Rule 12 or Rule 56 is 14 days." (SCRG's Reply to Pls.' Mot. for Recons. 2, Nov. 18, 2010, ECF No. 103, *Abednego*.)

The following day, November 18, 2010, the Alumina Defendants responded to the October 4, 2010 order denying their earlier motion as moot by renewing it, like the plaintiffs and SCRG had done before. Contending that the court "should not permit over 2,200 Plaintiffs to rely on common allegations regarding such individualized issues as standing, causation, and injury," the Alumina Defendants argued in their renewed motion to dismiss that the court should either dismiss the second amended complaint for failure to state a claim or order the plaintiffs to file more definite statements because "the joint allegations . . . are so vague as to be meaningless." ([Alumina] Defs.' Mot. to Dismiss Pls.' Second Amend. Compl. 23, Nov. 18, 2010, ECF No. 104, *Abednego*.) In addition to challenging the merits of the plaintiffs' claims, the Alumina Defendants also challenged whether each of the plaintiffs was previously a member of the *Henry* class and entitled to have the statute of limitations tolled during the time when the class had been certified. If not, the statute of limitation had run, they argued, and their claims should be dismissed.

Next, the plaintiffs, on December 1, 2010, moved for leave to file a third amended complaint. The proposed amendment they submitted made the corrections the court ordered on November 17, 2010 concerning certain misspelled and duplicate names, but did not remove the 198 plaintiffs or SCRG as a defendant. The plaintiffs explained that the reason they did not was because their motion for reconsideration remained pending. The District Court then denied their motion in an opinion and order issued December 16, 2010. In explaining the reason for denying the

reconsideration motion, the court explained that

> [t]he history of plaintiffs' counsel in this case has been a history of non-compliance with the deadlines established by this court's orders. The court will not excuse yet another failure by plaintiffs' counsel to comport with court rules and orders. The Federal Rules of Civil Procedure and [District Court of the] Virgin Islands Local Rules are clear that parties have 14 days in which to file a response in opposition to a motion, with the exception of motions filed under Rules 12 and 56 of the Federal Rules of Civil Procedure for which they have 21 days. The motion here concerned Rule 17 and Rule 21. Although it is regrettable that plaintiffs' counsel has not made timely responses a priority for her law firm, such neglect is not a proper basis on which to grant reconsideration.
>
> The court has shown remarkable leniency in granting plaintiffs' counsel additional time in which to correct her previous errors. That leniency has been abused and will extend no further. Plaintiffs' counsel had a legal and ethical obligation from the outset to file this action only in the names of those she actually represented. Clearly, she should know who her clients are before she files a complaint and should file a complaint only on behalf of those she represents. While inadvertent errors can always occur, this case goes far beyond that circumstance. In any event, any corrections should have been made promptly. [Attorney] Rohn has no adequate excuse as to why such problems were not remedied months ago. She has no right to pursue a claim for persons who have not entered into representation agreements with her, and this court cannot allow such claims to proceed.

*Abednego v. Alcoa, Inc.*, 1:10-cv-009, 2010 U.S. Dist. LEXIS 134170, *11-12 (D.V.I. Dec. 16, 2010) (unreported) (internal citation omitted).

Once reconsideration was denied, the plaintiffs filed the third amended complaint, removing SCRG as a defendant and the 198 plaintiffs per the court's order. As before, the court issued an order, entered December 30, 2010, denying as moot the plaintiffs' motion to remand and the defendants' motion to dismiss as moot solely because the third amended complaint had been filed. The Former Plaintiffs responded by moving, on January 4, 2011, to certify the May 14, 2010 order dismissing them as final pursuant to Federal Rule of Civil Procedure 54(b). The District Court

denied that motion two days later without explanation for the denial. Subsequently, the Alumina Defendants, on January 11, 2011, refiled for the third time their motion to dismiss.

Then — having twice before denied as moot the plaintiffs' motion to remand for lack of federal subject-matter jurisdiction — the District Court issued an order *sua sponte* on February 8, 2011, noting that it has "an independent obligation to determine whether it has subject matter jurisdiction" and then directing the parties to brief whether the court has jurisdiction "over the action." (Order 1, Feb. 8, 2011, ECF No. 123, *Abednego.*) In response, the plaintiffs filed a third motion to remand on February 23, 2011, which the defendants opposed on March 10, 2011. A week later, the District Court granted the plaintiffs' motion and, in an order and opinion entered March 17, 2011, remanded the case back to the Superior Court. The reason: "[t]he plaintiffs' Third Amended Complaint does not qualify as a mass action under CAFA because all the claims arise from a single event or occurrence, that is, a hurricane, in the Virgin Islands, where the action was originally filed, and the allegedly resulting injuries occurred in the Virgin Islands." *Abednego v. Alcoa, Inc.*, 1:10-cv-009, 2011 U.S. Dist. LEXIS 27892, *10 (D.V.I. March 17, 2011) (unreported).

Following remand, the Former Plaintiffs filed a new complaint in the Superior Court. That complaint, filed on March 30, 2011 and captioned *Phillip Abraham v. St. Croix Alumina, LLC*, was docketed as case number SX-11-CV-163 ("2011 action"). The Former Plaintiffs named as defendants the Alumina Defendants and Century Aluminum Company, a party added as a defendant in this matter (hereinafter "2009 action") when the District Court allowed the second amendment to the plaintiffs' complaint. Notably, the Former Plaintiffs did not name SCRG as a defendant in the 2011 action.

Nothing further occurred in the 2009 action or in the 2011 action until Century Aluminum Company filed a motion, on November 23, 2011, to dismiss the 2009 action. Meanwhile, in the 2011 action, the Court issued an order, entered December 27, 2011, *sua sponte* directing the Former Plaintiffs to file proof of service or face dismissal for failure to timely serve. In response, the Former Plaintiffs filed a motion on January 12, 2012 asking for more time to respond, which the Court subsequently granted in an order entered February 8, 2012. In the interim, the Former Plaintiffs filed two more motions, both on January 25, 2012, one in the

2009 action and the other in the 2011 action. Both motions remain pending.

In the 2009 action, the Former Plaintiffs moved, pursuant to Federal Rule of Civil Procedure 60(b)(4), for relief from the November 16, 2010 order. Although not in so many words, they asked the Superior Court to vacate the District Court's order dismissing them and SCRG and to reinstate all 198 plaintiffs and SCRG back into the 2009 action. In the 2011 action, the Former Plaintiffs requested additional time to effect service. In support they contended that the District Court's decision to remand the 2009 action for lack of subject-matter jurisdiction rendered its November 4, 2010 order in that matter void as a matter of law. If their motion for relief were granted in the 2009 action, it would effectively moot any concern over untimely service in the 2011 action because that matter could be closed. Two weeks later, on February 13, 2012, SCRG reappeared in the 2009 action and filed a response, which St. Croix Alumina, Alcoa, and Century Aluminum later joined, opposing the Former Plaintiffs' rule 60(b)(4) motion.

Meanwhile, because the plaintiffs had failed to respond to its motion to dismiss, Century Aluminum filed a motion on February 6, 2012, asking that the Court deem its motion to dismiss unopposed. In response, the plaintiffs, on February 28, 2012, filed a response in opposition to the motion to deem unopposed, explaining that they never responded to the November 23, 2011 motion to dismiss because they never were served with the motion. The plaintiffs then moved for leave to file their opposition out of time and *nunc pro tunc*. Predictably, Century Aluminum replied to the plaintiffs' response in opposition to its February 6, 2012 motion to deem its November 23, 2011 motion to dismiss unopposed. But in its response Century Aluminum withdrew its motion to deem unopposed acknowledging the possibility that it may not have served the plaintiffs' counsel. The plaintiffs' request to file their response out of time is still pending.

Back in the 2011 action, the Alumina Defendants appeared and jointly filed a motion, on March 12, 2012, to dismiss for failure to serve and for failure to state a claim for relief. They also requested oral argument on their motion to dismiss pursuant to Superior Court Rule 36. Century Aluminum likewise filed a motion in the 2011 action to dismiss for failure to timely serve and to dismiss for failure to state a claim. In response to both motions, the Former Plaintiffs — between April 16, 2012 and June

21, 2012 — filed seven motions requesting additional time to file their responses to Century Aluminum's motion to dismiss and to the Alumina Defendants' joint motion to dismiss. The basis for all seven motions was the busy schedule of the plaintiffs' counsel. All seven motions remain pending. However, subsequently, on June 21, 2012, the Former Plaintiffs filed responses in opposition to the Alumina Defendants' motion to dismiss and to Century Aluminum's motion to dismiss. The Alumina Defendants filed their reply on July 5, 2012, followed by Century Aluminum which filed its reply on July 10, 2012. Nothing further has occurred in the 2011 action to date.

In the interim in the 2009 action, the Alumina Defendants had refiled, on April 30, 2012, a revised version of the motion to dismiss they had filed in the District Court on January 11, 2011. Citing her "extremely busy" schedule, plaintiffs' counsel filed three motions requesting additional time to respond. Then, on August 2, 2012, the plaintiffs filed their response in opposition and moved for permission to exceed the page limitation. The Alumina Defendants filed their reply on August 16, 2012.

Nothing further occurred in the 2009 action until November 21, 2013 when Attorney Rohn filed a notice that a personal representative, Mary Henry, had been appointed by a Superior Court magistrate in a miscellaneous probate matter, *In re Estate of Nilsa Gbayor*, SX-13-MP-10, to represent the estate of Ms. Henry's daughter, Nilsa Henry-Gbayor, who had passed away on August 31, 2012 while this litigation was pending. Attorney Rohn also filed a motion the same day, requesting leave to file a fourth amended complaint. The proposed fourth amended complaint amends the third amended complaint by substituting the Estate of Gbayor in place of Linda Henry but would (so far as the Court can tell) continue the same claims pleaded in the December 3, 2009 complaint, as later amended in the District Court. None of the defendants responded in opposition to the November 21, 2013 motion to amend.

Finally, on July 15, 2015, Attorney Rohn filed a motion to withdraw as counsel for Effrail Jones, Sr. individually and as father and next of friend to Effrail Jones, Jr. As grounds for withdrawing as the attorney for Mr. Jones and his son, Attorney Rohn alleged that Mr. Jones has refused to cooperate with her or accept her advice and, as a result, there has been a breakdown in the attorney/client relationship. None of the defendants responded in opposition to Attorney Rohn's motion to withdraw.

## DISCUSSION

A. *Relief from District Court Order of November 16, 2010*

In their January 25, 2012 motion, the Former Plaintiffs ask the Court to grant them relief from "the judgment of the November 16, 2010 order." (*See generally* [Former] Pls.' R. 60(b)(4) Mot. for Relief from Jgmt of Nov. 16, 2010 Order 1, filed Jan. 25, 2012 (formatting altered).) Specifically, they move the Court to vacate the District Court's order as void, pursuant to Federal Rule of Civil Procedure 60(b)(4), and allow them to rejoin the 2009 action so they could then "withdraw" the 2011 action. *Id.* at 2. In opposing their motion, SCRG objects first to certain "preliminary matters," including the Former Plaintiffs' failure to serve SCRG with a copy of their motion. But in particular, SCRG objects to the Former Plaintiffs' failure to clarify whether they seek have the entire order vacated — and SCRG brought back in as a defendant — or only that portion that dismissed the claims of the 198 plaintiffs against the remaining defendants. To the extent the Former Plaintiffs request that all of their claims, including those against SCRG, be reinstated, SCRG is in opposition. But "if the [Former P]laintiffs are not seeking to add SCRG back into the case, then SCRG does not need to respond." (SCRG Opp'n to [Former] Pls.' R. 60(b)(4) Mot. for Relief 1-2, filed Feb. 13, 2012.) Unfortunately, the Former Plaintiffs never responded to SCRG's concern, which is, itself, concerning in that the Former Plaintiffs did not name SCRG as a defendant in the 2011 action. Furthermore, the Court takes judicial notice that Attorney Rohn filed a third "red dust" action in the Superior Court, but only against SCRG and with only 500 individual plaintiffs (approximately) not 2,800. That action — filed on December 13, 2011, captioned as *Eleanor Abraham et al. v. St. Croix Renaissance Group, LLLP*, and assigned case number SX-11-CV-550 — remains pending in the Superior Court, after having been removed to the District Court and remanded back. *See generally Abraham v. St. Croix Renaissance Group, L.L.L.P.*, 12-cv-011, 2012 U.S. Dist. LEXIS 173648 (D.V.I. Dec. 7, 2012), *aff'd* 719 F.3d 270, 58 V.I. 788 (3d Cir. 2013), *cert. denied*, 134 S. Ct. 898, 187 L. Ed. 2d 775 (2014). But it is a different case with different plaintiffs. The Court acknowledges the *Abraham* case, however, to highlight the confusion caused by filing a third case against SGRG before filing the motion for relief and then failing to reply to SCRG's response.

173

■ Turning to the merits, the Court must first identify what rule governs the Former Plaintiffs' motion because regardless of its caption — and notwithstanding the authority relied on — ultimately it is the substance of the motion that controls. *Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 612 (V.I. 2012) ("the substance of a motion, and not its caption, shall determine under which rule that motion is construed." (quotation marks and citation omitted)). In their motion, the Former Plaintiffs argue that the Superior Court must vacate the District Court's November 16, 2010 order pursuant to Federal Rule of Civil Procedure 60(b)(4), which governs relief from void judgments. They contend that "this Court may not exercise discretion in determining *whether* to vacate the Order of November 16, 2010 dismissing 198 Plaintiffs and dismissing Defendant SCRG from the action, but *must* vacate the judgment under Rule 60(b)(4) as void" instead. ([Former] Pls.' R. 60(b)(4) Mot. 5 (emphasis added).) The Former Plaintiffs are, to an extent, correct.

■ Courts do not have discretion to set aside void judgments but rather must set them aside as a matter of law. *See, e.g., Prosser v. Springel*, Civ. No. 2012-051, 2013 U.S. Dist. LEXIS 142911, *5-6 (D.V.I. Sept. 27, 2013) ("A motion for relief from judgment is ordinarily addressed to the sound discretion of the trial judge. However, if the court was powerless to enter the judgment in the first instance, the judgment is void and 'the trial judge has no discretion and must grant appropriate relief.' " (quoting *Textile Banking Co. v. Rentschler*, 657 F.2d 844, 851 (7th Cir. 1981) (ellipsis omitted) (unpublished)). *Cf. Bryan v. Fawkes*, 61 V.I. 416, 441 (V.I. 2014) ("purported judgments entered by a court without jurisdiction over the subject matter are void and as such are subject to collateral attack." (citation omitted)). But the November 16, 2010 order was not a judgment. A judgment is "a court's final determination of the rights and obligations of the parties in a case or, in the alternative, any order from which an appeal lies." *Island Tile & Marble, LLC*, 57 V.I. at 615 (quotation marks and citation omitted). Here, the November 16, 2010 order "adjudicate[d] fewer than all of the claims" and did not "terminate the action." *Id.* at 614 (citation omitted). Therefore, it is not a final order. Rather it is an interlocutory order. And since Superior Court Rule 50 (through which Federal Rule of Civil Procedure 60(b)(4) applies) concerns relief from final orders, not interlocutory orders, it simply does not apply here. Instead, the proper authority for granting relief from an interlocutory order is the common law generally.

174

*See id.* at 609 ("the common law confers trial courts with the discretion to revise any interlocutory order at any time prior to entry of a final judgment.").

■ Although " 'every order short of a final decree is subject to reopening,' " not every order should be reopened or set aside. *Id.* (emphasis omitted) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)). Instead, the question is one of "the discretion of the trial judge" and whether "grant[ing] relief . . . would be consonant with justice." *Id.* at 614, 616 (quotation marks and citation omitted). The Former Plaintiffs contend that the District Court issued its November 16, 2010 order without authority. "Since the District Court lacked subject matter jurisdiction over this matter," they argue, "the November 21, 201[0] decision dismissing the 198 Plaintiffs and Defendant SCRG is void." (Former Pls.' Mot. 7.) If they are correct, then setting aside the District Court's order would not be a matter of discretion but a matter of law because orders, like "judgments[,] in excess of subject-matter jurisdiction . . . [are] simply void." *Bryan*, 61 V.I. at 441 (internal quotation marks and citations omitted). Void orders, like void judgments, suffer from the same infirmities and must be set aside. *Accord Transamerica Assur. Corp. v. United States*, 423 F. Supp. 2d 691, 696 (W.D. Ky. 2006) ("the absence of subject matter jurisdiction voids the entire proceeding and all orders arising from it."); *City of Huntsville v. COLSA Corp.*, 71 So. 3d 637, 642 (Ala. 2011) ("when a trial court purports to exercise jurisdiction where it has none, every order and judgment entered pursuant thereto is void *ab initio*."); *Miller v. Mauzey*, 917 S.W.2d 633, 635 (Mo. Ct. App. 1996) ("Because the motions to dismiss were ruled upon by a judge without jurisdiction to do so, we declare the order dismissing those claims to be null and void."). But the Former Plaintiffs misunderstand the status of the District Court's order. It is not void. But, like any other interlocutory order, it can be reconsidered if clear error is shown. And such error is shown here.

■ "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994). They "do not wield plenary jurisdiction, and attention to [their] 'subject matter jurisdiction is not a mere nicety of legal metaphysics,' but instead rests on 'the central principle of a free society that courts have

finite bounds of authority.' " *In re C & M Props., L.L.C.*, 563 F.3d 1156, 1161 (10th Cir. 2009) (ellipsis omitted) (quoting *U.S. Catholic Conf. v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 77, 108 S. Ct. 2268, 101 L. Ed. 2d 69 (1988)). But most importantly — and what the Former Plaintiffs overlook — is that "a federal court always has jurisdiction to determine its own jurisdiction." *United States* v. *Ruiz*, 536 U.S. 622, 628, 122 S. Ct. 2450, 153 L. Ed. 2d 586 (2002) (citing *United States v. United Mine Workers*, 330 U.S. 258, 291, 67 S. Ct. 677, 91 L. Ed. 884 (1947)). Because the December 10, 2010 order was issued by the District Court of the Virgin Islands before it remanded this matter to the Superior Court of the Virgin Islands, the question is not one of voidness, but rather of the effect of a federal court order issued after a case has been removed from a state or territorial court but before the same case is remanded to the state or territorial court for lack of federal subject-matter jurisdiction.

Citing *Potter v. Janus Investment Fund*, 483 F. Supp. 2d 692, 708-09 (S.D. Ill. 2007), SCRG argues that the "general rule" is that "matters decided by the District Court before a remand are generally deemed to be the 'law of the case' after a remand." (SCRG Opp'n 3.) Because "the findings made by the District Court and the orders entered by it were all based on facts admitted by [the Former P]laintiffs and sound reasoning in applying the law to the facts of this case," and further because counsel for the Former Plaintiffs "did not have retainer agreements for any of these [individuals]," — a fact that SCRG claims "has not changed" following remand — "adding the 198 plaintiffs back into the case" "would require this Court to directly contradict [the District Court's] jurisdiction findings," which formed the bases if its decision to remand for lack of subject matter jurisdiction. *Id.* These findings, SCRG claims, were the law of the case before remand and "should . . . continue to be the law of the case" after remand. *Id.* But just like the Former Plaintiffs who claim the order is void, SCRG is similarly mistaken in claiming that the order is untouchable.

■ The law of the case doctrine — assuming it applies in this case and in the Virgin Islands, *see Hodge v. Bluebeard's Castle, Inc.*, 62 V.I. 671, 688 (V.I. 2015) ("this Court has yet to examine the extent to which this doctrine applies in Virgin Islands courts")[1] — is only "a rule of prudence, rather than an inexorable command." *Potter*, 483 F. Supp. 2d at 708. *See*

---

[1] Even if the doctrine were adopted for Virgin Islands courts, it is not clear that it would apply here in the trial court to pre-trial decisions not yet reviewed on appeal. *Cf. Lutheran Day*

*also Jones v. Jerome*, 62 V.I. 160, 163 n.2 (V.I. Super. Ct. 2015) (noting that courts generally "can revise any previous orders . . . at any time before the entry of judgment adjudicating all claims."). And while it is true that "what is done at one stage of a case [should] not be set aside lightly at a later stage of the case," *Potter*, 483 F. Supp. 2d at 708, what SCRG fails to appreciate here is that "the 'law of the case doctrine has no bearing on the revisiting of *interlocutory* orders, even when a case has been reassigned from one judge to another' " or, as here, from one court to another. *In re Estate of George*, 59 V.I. 913, 920-21 (V.I. 2013) (emphasis added) (quoting parenthetically *Rimbert v. Eli Lilly Co.*, 647 F.3d 1247, 1252 (10th Cir. 2011). "Interlocutory decisions in remanded claims made by the district court prior to remand remain open to review and revision in state [or territorial] court; such orders carry no preclusive effect." *In re C & M Props, L.L.C.*, 563 F.3d at 1166. *See also* 18B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 4478.4 (2d ed. 2002) ("A number of federal courts have stated that law-of-the-case principles do not bind the state court after remand for want of federal subject-matter jurisdiction, even in cases in which the determination of subject-matter jurisdiction involves a ruling on the reach of federal law."). But orders issued by a federal district court after removal but before remand do not simply disappear following remand. Instead, "they would ordinarily remain in effect, following the remand, until the state [or territorial] court took appropriate action to modify or set them aside." *Chang v. Buffington*, 125 Haw. 186, 256 P.3d 694, 701 (2011) (citation omitted). And if setting aside an interlocutory order issued by a federal court is warranted after remand, the state or territorial court is also "free to revisit any issue decided by the federal court in a remanded claim prior to remand, and is 'perfectly free to reject the remanding court's reasoning.' " *In re C & M*

---

*Care v. Snohomish Cty*, 119 Wn.2d 91, 829 P.2d 746, 756-57 (1992) ("The term law of the case means different things in different circumstances. In one sense, it refers to the binding effect of determinations made by the appellate court on further proceedings in the trial court on remand. The term also refers to the rule that the instructions given to the jury by the trial court, if not objected to, shall be treated as the properly applicable law. Finally, the term is employed to express the principle that an appellate court will generally not make a redetermination of the rules of law which it has announced in a prior determination in the same case or which were necessarily implicit in such prior determination." (internal quotation marks and citations omitted)). *Accord Jones v. Jerome*, 62 V.I. 160, 163 n.2 (V.I. Super. Ct. 2015) (explaining circumstances in which law of the case doctrine typically arises).

*Props., L.L.C.*, 563 F.3d at 1166 (quoting *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 647, 126 S. Ct. 2145, 165 L. Ed. 2d 92 (2006)). *But cf. Powers v. Southland Corp.*, 4 F.3d 223, 234 (3d Cir. 1993) ("While the law of the case doctrine places some (discretionary) limitation on the state *trial* court's reconsideration of issues decided by the federal trial court, the law of the case doctrine would not limit the state *appellate* court's power to review the decision." (emphasis added)).

Notwithstanding SCRG's claim that the November 21, 2010 order is untouchable, it is not. But the Former Plaintiffs are likewise incorrect in claiming that the District Court's order dismissing them is void. It is not void. But it can be reconsidered on appropriate grounds such as a showing of clear error, which is shown here. SCRG is incorrect that "before this Court can allow [that] order to be set aside, it needs to make a factual finding directly contrary to [the District Court] — and find as a matter of fact that plaintiffs' counsel represents these 198 plaintiffs." (SCRG Opp'n 5.) As discussed further below, the remedy for any error in how the claims of some 198 people were brought was not to punish them for the actions of their purported attorney by dismissing their claims, but rather to sever their claims and allow them time to obtain counsel (either the same or different) or to proceed *pro se.*

■ At the May 14, 2010 hearing, the District Court cited *Pueblo of Santa Rosa v. Fall* as the basis for questioning — before determining if it had subject-matter jurisdiction — whether Attorney Rohn was authorized to represent all 2,800 or so plaintiffs named in the complaint. There is no question that courts have "power, at any stage of the case, to require an attorney, one of its officers, to show [her] authority to appear." *Pueblo of Santa Rosa*, 273 U.S. at 319. But the concern in this instance is two-fold: first the District Court's refusal to determine whether it had subject matter jurisdiction before addressing anything else and then — even if it could defer that determination — "the remedy" for Attorney Rohn's purported lack of authority, "which [was] in the discretion of the Court, and ought to [have] be[en] adapted to the case." *Id.* (quoting *King of Spain*, 14 F. Cas. at 578).

■ Although federal courts are limited in their jurisdiction, "there is no unyielding jurisdictional hierarchy" even "in cases removed from state [or territorial] court to federal court." *Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 578, 119 S. Ct. 1563, 143 L. Ed. 2d 760 (1999). While it is "[c]ustomar[y]" for the federal court to "resolve[] doubts about its

jurisdiction over the subject matter" "*first*" before proceeding with a case on its merits, there are times when "a personal jurisdiction inquiry" that is easier to decide can take "priority" over a subject-matter jurisdiction inquiry. *Id.* So, in other words, if the "district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question," the Supreme Court of the United States has directed that the district court can exercise "its discretion by turning directly to personal jurisdiction" question first. *Id.* at 588. But personal jurisdiction was never at issue here.

■■ None of the defendants moved the District Court to dismiss the complaint for lack of personal jurisdiction. In fact, by not asserting in their respective motions to dismiss the complaint for failure to state a claim for relief a challenge to personal jurisdiction, the Alumina Defendants, on February 19, 2010, and SCRG, on February 22, 2010, abandoned this defense, *see* FED. R. CIV. P. 12(h)(1), long before Attorney Rohn issued the March 19, 2010 press release. Since there were no straightforward personal jurisdiction issues raised when this matter was removed, the District Court, out of "sensitivity to state [and territorial] courts' coequal stature," should have been "impel[led]" to consider the plaintiffs' challenge to its subject-matter jurisdiction first. *Ruhrgas Ag*, 526 U.S. at 587-88.

■■ And even if the District Court did have discretion to consider Attorney Rohn's authority to represent all of the plaintiffs before determining whether it had subject-matter jurisdiction, the court did not have the discretion to dismiss the claims of 198 people if dismissal meant the statute of limitations had run. Initially it was at least debatable whether Attorney Rohn — as the former, local counsel for the class before it was decertified — had implied authority to represent the former class members. *Cf. In re "Agent Orange" Prod. Liab. Litig.*, 800 F.2d 14, 18 (3d Cir. 1986) ("the class attorney's duty does not run just to the plaintiffs named in the caption of the case; it runs to all of the members of the class."); *McElmurry v. U.S. Bank Nat'l Ass'n*, No. CV-04-642-HU, 2005 U.S. Dist. LEXIS 45199, *17 (D. Or. Dec. 1, 2005) (unreported) ("some courts have attached a constructive attorney-client relationship between class counsel and class members once a suit has been filed." (citing *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1110 (5th Cir. 1978)); *In re Chicago Flood Litig.*, 289 Ill. App. 3d 937, 682 N.E.2d 421, 425, 224 Ill.

179

Dec. 860 (1997) ("the class action permits a representative party, a lawyer, and a court to initiate a mass action on behalf of similarly situated class members without their consent. In certifying a class action, the court confers the status of litigant upon class plaintiffs and creates an attorney-client relationship between those plaintiffs and a court-designated lawyer."). *See also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 14 cmt. i (2000) ("a lawyer owes certain duties to members of a class in a class action in which the lawyer appears as lawyer for the class."). Yet rather than consider the scope of Attorney Rohn's authority — a "question of fact, and not a question of law" and one not limited only to "a written agreement establishing the terms of a lawyer[']s representation," *Atty Griev. Comm'n v. Stillwell*, 434 Md. 248, 74 A.3d 728, 738 n.15 (2013) — the District Court instead focused solely on whether Attorney Rohn could produce signed, retainer agreements for all 2,800 individuals. And even though Attorney Rohn could not produce retainer agreements for 198 individuals, the District Court still had an obligation to consider what remedy would have been proper for those individuals' rights, rather than dismiss their claims based solely on their purported attorney's lack of apparent authority.

■ In *Pueblo of Santa Rosa*, the Supreme Court — in reversing the court of appeals which had in turn affirmed the district court's dismissal on the merits — instructed that the dismissal on the merits was improper because it "should have been not upon the merits, but without prejudice to a suit if properly brought" by an attorney authorized to represent the plaintiffs. 273 U.S. at 321. There, attorneys purportedly acting on behalf of members of a Native American village or pueblo had filed a lawsuit against the Secretary of the Interior to enjoin the sale of the tribe's land by the United States. *See id.* at 316 (citing *Lane v. Pueblo of Santa Rosa*, 249 U.S. 110, 39 S. Ct. 185, 63 L. Ed. 504 (1919)). In his answer and by motion, the Secretary challenged the authority of the plaintiff's lawyers, claiming that the pueblo had not authorized the representation. *Id.* The district deferred ruling on the motion to dismiss, proceeded with the merits, and then overruled the motion and dismissed the complaint. *See id.* at 318-19 (citing *Pueblo of Santa Rosa v. Fall*, 12 F.2d 332 (D.C. Cir. 1926)). The court of appeals affirmed, but "disapproved" of the district court's failure to address the challenge to the authority of the plaintiffs' counsel first, believing it "a preliminary matter, to be disposed of before proceeding to the merits." *Id.* at 319. The Supreme Court of the United

States disagreed and reversed, holding that the dismissal should not have been on the merits but instead "without prejudice to the bringing of any other suit by and with the authority of the alleged Pueblo." *Id.* at 321. The Court reasoned that

> it would be strange, if a Court whose right and whose duty it is to superintend the conduct of its officers, should not have the power to inquire by what authority an attorney of that Court undertakes to sue or to defend, in the name of another — whether that other is a real or fictitious person — and whether its process is used for the purpose of vexation or fraud, instead of that for which alone it is intended. The only question can be, as to the time and manner of calling for the authority, and as to the remedy, which are in the discretion of the Court, and ought to be adapted to the case.

*Id.* at 319 (quoting *King of Spain v. Oliver*, 14 F. Cas. 577, 578 (C.C. Pa. 1810) (No. 7,814)).

Here, the District Court did not consider the manner of Attorney Rohn's authority or adapt the remedy for any lack of authority to this case. Attorney Rohn had stressed to the District Court that she filed the complaint in the Superior Court with the information that she had after decertification and in light of the statute of limitations. Clearly the District Court should have realized that by dismissing the claims of 198 individuals in 2010 — claims that were initially asserted in 1999 as a class action and then ten years later as a group complaint filed in 2009 following decertification — that a six-year statute of limitations in the Virgin Islands for claims of trespass to real property or injury to personal property may have run, *see* 5 V.I.C. § 31 (3)(C)-(D), and certainly that a two-year statute of limitation in the Virgin Islands for personal injury claims would have run. *See id.* § 31(5)(A). "A 'statute of limitations is not tolled by the filing of a complaint subsequently dismissed without prejudice,' as 'the original complaint is treated as if it never existed.' Therefore, the dismissal of a complaint without prejudice after the statute of limitations has run forecloses the plaintiff's ability to remedy the deficiency underlying the dismissal and refile the complaint.' " *Brennan v. Kulick*, 407 F.3d 603, 606 (3d Cir. 2005) (quoting *Cardio-Medical Assocs. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 77 (3d Cir. 1983)). The result here is that the dismissal without prejudice — because the purported attorney for 198 individuals could not prove her authority —

would have effectively become a dismissal with prejudice (and thus on the merits) because the Former Plaintiffs' rights to refile would have been foreclosed. "In short, 'when a suit is dismissed without prejudice, the statute of limitations is deemed unaffected by the filing of the suit, so that if the statute of limitations has run the dismissal is effectively with prejudice.' " *Ciralsky v. CIA*, 355 F.3d 661, 672, 359 U.S. App. D.C. 366 (D.C. Cir. 2004) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000)). Since dismissal in this instance would have effectively denied these 198 individuals their day in court, the more appropriate remedy — particularly in light of *Pueblo of Santa Rosa* concern with tailoring the remedy — was either to sever their claims for improper joinder, stay them, and then allow them time to obtain counsel, or perhaps allow Attorney Rohn time to obtain their consent and their ratification of her actions on their behalf. *Accord Walker v. Sutherland*, 136 Ore. 355, 299 P. 335, 336 (1931) ("at any stage of the proceedings, in any case, when it is properly suggested to the court that a party plaintiff is represented by unauthorized counsel, the court may call such counsel to show his authority, and if he is unauthorized, the court may suspend further proceedings or dismiss the suit or action so far as such party is concerned. If the party for whom such unauthorized appearance is made ratifies the action of such attorney, the cause may proceed in the same manner as if the attorney were authorized in the first instance."); *Trenton v. Fowler-Thome Co.*, 57 N.J. Super. 196, 1,54 A.2d 369, 370 (1959) ("an action instituted by an agent without proper authorization from the plaintiff will not, for that reason, be dismissed in the face of subsequent ratification by the principal."). *Cf. SEI Corp. v. Norton & Co.*, 631 F. Supp. 497, 501-03 (E.D. Pa. 1986) (finding defendant ratified attorney's unauthorized representation by not informing the court and the plaintiff of the purported attorney's lack of authority until just before trial).

 Dismissal was not the proper remedy, particularly since what SCRG expressly invoked in its October 25, 2010 motion by citing to Federal Rule of Civil Procedure 21 was severance. And even though SCRG also asked in the same motion for outright dismissal, the District Court was mistaken in granting that request "[b]ecause the function of the motion, not the caption, dictates which [r]ule applies," *Smith v. Evans*, 853 F.2d 155, 159 (3d Cir. 1988), and further because "[m]isjoinder of parties is not a ground for dismissing an action." FED. R. CIV. P. 21. Instead, the court should have "on its own . . . at any time . . . add[ed] or

182

drop[ped]" the Former Plaintiffs or severed their claims but only "on just terms." *Id. See also Am. Fid. Fire Ins. Co. v. Construcciones Werl, Inc.,* 407 F. Supp. 164, 190, 12 V.I. 325 (D.V.I. 1974) ("Rule 21 is a mechanism for correcting either the misjoinder or non-joinder of parties or claims.").

As the United States Court of Appeals for the Third Circuit has directed, "[t]o remedy misjoinder . . . the court has two remedial options: (1) misjoined parties may be dropped 'on such terms as are just'; or (2) any claims against misjoined parties 'may be severed and proceeded with separately.' " *DirecTV, Inc. v. Leto,* 467 F.3d 842, 845 (3d Cir. 2006) (quoting FED. R. CIV. P. 21)). But because a court's "decision to remedy misjoinder" has "important and potentially adverse statute-of-limitations consequences," the "court must analyze" those consequences before choosing which remedy to employ. *Id.* at 845-46.

> The effect of each option is quite different. When a court drops a defendant under Rule 21, that defendant is dismissed from the case without prejudice. When that occurs, the statute of limitations is not tolled because we treat the initial complaint as if it never existed. But when a court severs a claim against a defendant under Rule 21, the suit simply continues against the severed defendant in another guise. The statute of limitations is held in abeyance, and the severed suit can proceed so long as it initially was filed within the limitations period.

*Id.* at 845 (internal quotation marks, citations, and footnote omitted). So, in other words, when "dropping and dismissing a party, rather than severing the relevant claim" will result in the claim being "blocked by the statutes of limitations," *id.* at 845, 847, a court must choose to sever the claim, rather than to drop the party, because that is the just option. Once severed, the claims proceed separately as "independent actions with separate judgments entered in each." *Id.* at 845 (internal quotation marks and citation omitted).

Remarkably, this is exactly what SCRG requested, "to remove 198 named plaintiffs as well as SCRG as named parties in this litigation *pursuant to Rule 21*." (SCRG's R. 17 and R. 21 Mot. 1, Oct. 25, 2010, ECF No. 92, *Abednego* (emphasis added).) And, as further discussed below, this would have been the proper remedy since dismissal under the circumstances shown in this litigation would have meant that the Former Plaintiffs' claims would be blocked by the statute of limitations. Because *Pueblo of Santa Rosa* clearly expressed concern over the proper remedy

183

in cases brought by an attorney who may lack authority, and considering that Attorney Rohn may have owed a continuing duty to all former class members, and further since *DirecTV* clearly directed that dismissing a claim would be improper if it result is that the claim is blocked by the statute of limitations, the District Court's November 21, 2010 order must be set aside. The Former Plaintiffs will be allowed to rejoin this action.

A final question concerns the effect of vacating the November 21, 2010 order, namely whether SCRG should, like the Former Plaintiffs, also be brought back in as a party. Given that all of the plaintiffs' claims, not just the Former Plaintiffs' claims, were dismissed against SCRG, and then only because the redacted retainer agreements Attorney Rohn filed did not show authority to sue SCRG, the Court believes that the dismissal of SCRG should be set aside as well. Even assuming that SCRG is correct and the retainer agreements — which were not among the files returned to this court on remand — do show that the plaintiffs did not authorize suit against SCRG, the plaintiffs could ratify that action. Furthermore, in light of the third "red dust" case cited above, *Abraham*, brought on behalf of many more plaintiffs than the 198 individuals dismissed by the November 21, 2010 order — and considering that the Former Plaintiffs failed to respond to SCRG when it asked in its opposition about the scope of their motion to vacate — it is entirely possible that all of the plaintiffs (including the Former Plaintiffs) have abandoned any claims against SCRG that may have been part of the former *Henry* class action or this litigation when first filed in 2009. Or perhaps some may have joined the *Abraham* matter. Because the Court simply cannot tell at this time, the safer course — considering the statute of limitations — is to vacate the November 21, 2010 order in its entirety and, as discussed further below, allow the plaintiffs to refile individual, verified complaints and the defendants, including SCRG, to raise any defenses not already waived by motion.

B. *Motions to Dismiss for Failure to State a Claim*

 Turning next to the motions to dismiss the complaint for failure to state a claim, and the related ancillary motions, the Court will grant the requests for additional time and for leave to exceed the page limitations and deem the motions and responses filed timely and proper. Concerning the merits of the motions filed by the Alumina Defendants and by Century Aluminum, the Court must deny both simply because the Court cannot

tell from the complaint as presently drafted whether it fails to state a claim on behalf of any individual plaintiff against any individual defendant or whether the statute of limitations has run. But the Alumina Defendants do correctly note that the complaint is inadequate in so far as it attempts to state claim for all plaintiffs collectively.

 In ruling on a motion to dismiss for failure to state a claim for relief, the Superior Court must first

> take note of the elements a plaintiff must plead to state a claim so that the court is aware of each item the plaintiff must sufficiently plead. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. These conclusions can take the form of either legal conclusions couched as factual allegations or naked factual assertions devoid of further factual enhancement. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief. If there are sufficient remaining facts that the court can draw a reasonable inference that the defendant is liable based on the elements noted in the first step, then the claim is plausible.

*Brady v. Cintron*, 55 V.I. 802, 823 (2012) (internal alteration omitted) (quoting *Joseph v. Bureau of Corr.*, 54 V.I. 644, 649-50 (2011)). Additionally, because the statute of limitations is an affirmative defense, it must be raised at the earliest opportunity or it will be deemed waived. *Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 536 (V.I. 2015) ("it is well established that the statute of limitations is an affirmative defense that must be specifically pleaded at the first opportunity or else is waived."). Here, the plaintiffs have pleaded seven causes of action:[2] public nuisance, private nuisance, intentional infliction of emotional distress, negligent infliction of emotional distress, and two counts of negligence, the first against the defendants generally and the second only against Alcoa and St. Croix Alumina. The plaintiffs also assert a claim of strict liability, though labeled as a claim for maintaining an abnormally dangerous condition, and a demand for punitive damages, which is not a stand-alone claim. *Cf. Der Weer v. Hess Oil V.I. Corp.*, 60 V.I. 91, 95 n.1 (Super. Ct. 2014).

---

[2] Although the complaint as initially filed in the Superior Court alleged a claim of negligence *per se*, the complaint as amended in the District Court and later remanded omits that claim.

Both the Alumina Defendants and Century Aluminum first argue that the plaintiffs' complaint should be dismissed because the statute of limitations on all of their claims ran years ago. Specifically, the Alumina Defendants argue that all claims for "personal injury and property damages that pre-date Hurricane Georges in 1998 . . . are time-barred as a matter of law" and must be dismissed. (Alumina Defs' Renewed Mot. to Dismiss Pls' Third-Amend. Compl. 8, filed Apr. 30, 2012.) Century Aluminum similarly argues that the statute of limitations has run, but its challenge is more nuanced. Century Aluminum argues that because the plaintiffs in the *Henry* class action never named Century Aluminum as a defendant, they had "to bring any claims against [it] by September 25, 2000." (Def. Century Aluminum Co.'s' Mot. to Dismiss 7, filed Nov. 23, 2011.) Because they did not, "[t]he claims alleged in this suit, filed almost ten years after the deadline, are time barred." *Id.* Both the Alumina Defendants and Century Aluminum further argue that the plaintiffs should not benefit from the principle announced by the Supreme Court of the United States in *American Pipe & Construction Company v. Utah*, 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974), that federal statutes of limitations are tolled during the time when a person is part of a class action lawsuit. (*See* Alumina Defs' Mot. 9 ("Even if each Plaintiff were a former member of the *Henry* 23(b)(3) class, *American Pipe* would not toll the statute of limitations on some or all claims."); Cent. Alum. Mot. to Dismiss 9 (" '*American Pipe* tolling does not apply to a defendant that was not named as a defendant in the class action on which the tolling is based' because 'a party who is not named as a defendant in the class action cannot be seen as having been notified of the claims against it in the class action.' " (quoting parenthetically *Shriners Hosps. for Children v. Qwest Commc'ns Int'l, Inc.*, No. 04-cv-00781, 2007 U.S. Dist LEXIS 70782, *14 (D. Co. Sept. 24, 2007))).

Even assuming the defendants are correct that each of the plaintiffs' claims is subject to a two-year statute of limitation, *but see* 5 V.I.C. § 31(3)(C)-(D), the Court is unable to determine at present whether any individual plaintiff's claim would be subject to dismissal under the statute of limitations because the complaint, in its present form, concludes that "Plaintiffs herein are former members of the original class in *Henry*." (Pls.' Proposed Fourth Amend. Compl. ¶ 2108, filed Nov. 21, 2013.) If, as the plaintiffs allege, "[t]he *Henry* plaintiffs exchanged discovery with the defendants over the first two years of the litigation," namely between

1999 and 2001, and then "for about five more years, the parties traveled the country deposed fact and expert witnesses," *id.* ¶ 2109, then the plaintiffs certainly can plead with more specificity which of them were "*Henry* plaintiffs" and possibly entitled to equitable tolling. But because the complaint does not give any information about any individual plaintiff and whether they were, in fact, members of the class, it is unreasonable to ask the Court — but more importantly the defendants — to simply trust them when they allege, not show, that they are "former members of the original class in *Henry*, in that, as of September 21, 1998, they either resided and/or worked and/or owned property in one of the six communities" "adjacent to and downwind from the St. Croix Alumina Refinery Plant." (Pls' Proposed Fourth Amend. Compl. ¶¶ 2108, 2017.)

 But more importantly, and what the plaintiffs fail to appreciate here, is that equitable tolling does not apply to all persons who *could have been* included in a class. Rather, a class is comprised of those persons who received notice and did not opt out. *See* FED. R. CIV. P. 23(c). Assuming *arguendo* that the Virgin Islands were to join the majority of jurisdictions and recognize the tolling of the statute of limitations for the time when a class action is pending, the Court still cannot tell from the complaint as presently drafted whether even one plaintiff (out of the thousands of persons named in the complaint) was not a member of the *Henry* class and would not benefit from equitable tolling. *See, e.g., Dow Chem. Corp. v. Blanco*, 67 A.3d 392, 393 (Del. 2013) ("Accepting the rationale of the United States Supreme Court on class action tolling, we extend the class action tolling exception to cross-jurisdictional class actions and hold that class action members' individual claims are tolled while a putative class action on their behalf is pending. Until class action certification is denied, the individual claims remain tolled. Tolling applies whether the class action is brought in Delaware or in a foreign court."); *Cunningham v. Ins. Co. of N. Am.*, 515 Pa. 486, 530 A.2d 407, 408 (1987) ("It is well established that upon the filing of a class action, the statute of limitations is normally tolled for all putative plaintiffs in the class."). Furthermore, what was revealed by litigation in the District Court over Attorney Rohn's authority is that some of the plaintiffs are still minors. What both the defendants and the plaintiffs ignore is that statutes of limitations do not begin to· run for those persons who are "under the age of twenty-one years." 5 V.I.C. § 36(a)(1). *See also Galvan v. Hess Oil V.I. Corp.*, 549 F.2d 281, 288-89, 13 V.I. 636 (3d Cir. 1977) (holding the twenty-one

year age limitation in section 36 of title 5 not impliedly amended when Legislature lowered the age of majority to eighteen). Thus, since all of the plaintiffs, including minor plaintiffs, are identified in the complaint only by name and place of residence, the Court simply cannot tell yet if any of their claims must be dismissed. For this reason, both motions must be denied without prejudice.

In their second argument, the defendants argue (in the alternative) that even if the Court did find that the relevant statute of limitations has not run, the complaint should still be dismissed because it fails to state plausible claims for relief. "Indeed," the Alumina Defendants argue, "the 2175-paragraph Complaint makes joint allegations on behalf of more than 2000 individuals, but fails to allege *any* plaintiff-specific facts to state a plausible claim for relief for a single one of these individuals." (Alumina Defs' Mot. 10.) Century Aluminum, also in the alternative, targets the sufficiency of the complaint, but more broadly. "The question of ownership and operation of the alumina refinery was," Century Aluminum contends, "definitively decided . . . years ago in *Henry*." (Century Aluminum Mot. to Dismiss 21.) The District Court found that Virgin Islands Aluminum Company, or VIALCO, owned the alumina refinery, Century Aluminum claims. And although Century Aluminum's corporate predecessor, Century Chartering, "owned all of the stock of Vialco for one day," that does not translate into ownership or operation. *Id.* at 2. Since all of "the Plaintiffs' claims rest squarely on the allegation that Century Aluminum is an owner and/or operator of the alumina refinery," and since "Century Aluminum was neither an owner nor an operator," Century Aluminum cannot be found liable and the plaintiffs' claims against it should be dismissed. *Id.* at 21.

Here, the defendants are correct that none of the plaintiffs have stated their claims with any *individual* specificity. While private nuisance is governed by statute[3] and negligence is governed by case law,[4] the law governing the remaining claims is at best unsettled. *See Gov't of the V.I. v. Connor*, 60 V.I. 597 (2014) (holding that the Superior Court must conduct an analysis pursuant to *Banks v. Int'l Rental Car & Leasing Corp.*, 55 V.I.

---

[3] *See* 28 V.I.C. § 331 (private nuisance); *accord Bermudez v. V.I. Tel. Co.*, 54 V.I. 174, 185-93 (2011) (holding that private nuisance claims are governed by statute but statute is merely declaratory of the common law).

[4] *See Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (2014) (negligence).

967 (2011), in the absence of binding common law precedent). While this Court would rely on the *Banks* analysis it previously adopted concerning the tort of intentional infliction of emotional distress,[5] the Court would still have to determine whether, after *Connor*, the Virgin Islands should recognize the tort of negligent infliction of emotional distress,[6] impose strict liability for certain dangerous activities, and allow a private cause of action for public nuisance[7] — since none of these causes of action are governed by statute or recognized in binding precedent. *See Connor*, 60 V.I. at 605 n.1. And even if the Court did decide these preliminary questions, the Court could not — at this juncture — decide whether each individual plaintiff has alleged a plausible claim of any of these torts since

[5] *See Mina v. Hotel on the Cay Time-Sharing Ass'n*, 62 V.I. 210, 214 n.3 (V.I. Super. Ct. 2015) (intentional infliction of emotional distress) (joining *Edwards v. Marriott Hotel Mgmt Co (V.I), Inc.*, ST-14-CV-222, 2015 V.I. LEXIS 13, *24 n.62 (V.I. Super. Ct. Jan. 29, 2015) (unpublished), which in turn relied on the *Banks* analysis conducted in *Joseph v. Sugar Bay Club & Resort Corp.*, ST-13-CV-491, 2014 V.I. LEXIS 14, *6-9 (V.I. Super. Ct. Mar. 17, 2014) (unpublished), which was later reversed on other grounds). *See Joseph v. Sugar Bay Club & Resort Corp.*, S. Ct. Civ. No. 2014-0048, 2015 V.I. Supreme LEXIS 4, *2 n.1 (V.I. Feb. 15, 2015) (unpublished) (noting that plaintiff abandoned intentional infliction of emotional distress claim on appeal). *But cf. e.g., Gmuer v. Garner*, 426 So. 2d 972, 974-75 (Fla. Ct. App. 1983) (per curiam) (noting that Florida, unlike "the majority of jurisdictions" does not recognize the tort of intentional infliction of emotional distress); *Hart v. O'Malley*, 436 Pa. Super. 151, 647 A.2d 542, 553 (1994) ("There is much controversy over whether Pennsylvania jurisprudence recognizes the tort of intentional infliction of emotional distress") (collecting cases).

[6] So far as the Court can tell, no court, binding on the Superior Court, has ever expressly adopted the tort of negligent infliction of emotional distress. And some jurisdictions have refused to recognize it as a stand-alone tort. *See, e.g., Burgess v. Super. Ct.*, 2 Cal. 4th 1064, 9 Cal. Rptr. 2d 615, 831 P.2d 1197, 1200 (1992) (negligent infliction of emotional distress) ("We have repeatedly recognized that the negligent causing of emotional distress is not an independent tort, but the tort of negligence. The traditional elements of duty, breach of duty, causation, and damages apply." (internal quotation marks, citation, and alteration omitted)); *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993) (abolishing negligent infliction of emotional distress as an independent tort and holding instead that mental anguish can be recovered in negligence).

[7] *See, e.g., State v. Cray*, 85 Vt. 99, 81 A. 450, 451 (1911) ("No private action can be had by a person to recover damages for a public nuisance, nor for an injunction to abate such nuisance, unless he has suffered an injury peculiar to himself beyond that by the rest of the public. It is the general rule that common nuisances against the public are punishable only by indictment." (citations omitted)). *Compare NAACP v. AcuSport, Inc.*, 271 F. Supp. 2d 435, 497 (E.D.N.Y. 2003) ("A private party bringing an action for public nuisance is acting as a de facto private attorney general, suing on behalf of itself as well as the public."), *with* 14 V.I.C. §§ 1461-62 (defining the crime of public nuisance and setting its punishment).

189

none of the plaintiffs provided any individualized factual allegations in their "mass" complaint.

In their opposition to the Alumina Defendants' motion, the plaintiffs assert that it is the defendants who "assume, without any support, that plaintiffs must individually plead facts supporting every element of every claim against every defendant." (Pls' Opp'n to [Alumina] Defs.' Renewed Mot. to Dismiss Third-Amend. Compl. 1, filed Aug. 2, 2012.) The plaintiffs further contend that "all that the law of this jurisdiction requires" is "enough factual allegations 'to raise a right to relief above the speculative level.' " *Id.* at 2 (quoting *Phillips v. Cty of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)). It is actually the plaintiffs who misunderstand what is required here.

■ In determining whether a claim is plausible, courts are guided by their "judicial experience and common sense." *Joseph*, 54 V.I. at 650 (quotation omitted). And even though "the liberal pleading procedure known as 'notice pleading' " has not been "abandon[ed]," and all that remains necessary is that a complaint provides " 'a short and plain statement of the claim and its grounds,' " *id.* (quoting *Robles v. Hovensa, LLC*, 49 V.I 491, 500 (2008)), what the plaintiffs forget is that each of them must give a short and plain statement of each of their claims and the grounds in support. In other words, even though this may be a "mass tort case," (Pls.' Opp'n 2), the plaintiffs cannot provide mass statements in a mass complaint alleging claims *en masse*. Common sense dictates the impracticably and implausibility of joining together more than 2,000 individuals asserting approximately 14,000 different causes of action in a single complaint against five or six different defendants. The Alumina Defendants are correct: "the decision to jointly assert the claims of more than 2,000 individual plaintiffs in one lawsuit does not relieve *each* plaintiff of the obligation to demonstrate a plausible entitlement to relief." ([Alumina] Defs' Reply in Supp. of Renewed Mot. to Dismiss Pls.' Third Amend. Compl. 7, filed Aug. 16, 2012.) But they are not correct that dismissal is "routinely" granted, nor that it should be granted here.

■ Citing *Davis v. Koppers Industries, Inc.*, the Alumina Defendants acknowledge that one option is to "forc[e] the plaintiffs to sever their claims and file separate actions." *Id.* at 5 (citing *Davis v. Koppers Indus., Inc.*, No. 05-CA-464, 2006 U.S. Dist. LEXIS 100900 (W.D. Tex. Oct. 10, 2006) (unreported)). And here, like in *Davis*, "[w]ith so many plaintiffs, time periods, and possible causes of action at issue, this case is a

190

millipede the size of an octopus. Herding such a beast is . . . a Herculean effort." *Davis*, 2006 U.S. Dist. LEXIS 100900 at *18. Persons may certainly join together as plaintiffs in one action, but only when their right to relief — even if asserted jointly, severally, or in the alternative — arises out of the same transaction or occurrence and questions of law or fact common to them all will arise in the action. *See* FED. R. CIV. P. 20(a)(1) (applicable via. SUPER. CT. R. 7). In other words, joinder is only proper when common legal or factual questions arise concerning the same transaction or occurrence as to every plaintiff joined in that action.

Here, joinder is improper because the claims these plaintiffs are pursuing did not arise from the same transaction or occurrence. While broadly speaking the event that may have had the most impact on the largest number of persons was Hurricane Georges disbursing red dust into the neighborhoods where the plaintiffs reside, a hurricane was not the only "transaction" at issue here. For example, the December 9, 2009 complaint alleged initially that "deadly *asbestos* blew about the neighborhoods down wind from the refinery for at least ten (10) years." (First Am. Complaint ¶ 2934, filed Dec. 9,2009 (emphasis added).) Then the complaint, as later amended in the District Court, alleged that Alcoa and St. Croix Alumina were negligent in the way they "attempt[ed] to clean up" the red dust from the "Plaintiffs' homes, appliances, furnishings and clothes," which happened after the hurricane had passed. (Third Am. Compl. ¶ 2075, Dec. 12, 2010, ECF No. 111-2, *Abednego*.) But even assuming for purposes of this opinion only that every plaintiff's claim against every defendant arose from the same transaction or occurrence, joinder was still improper because questions of law will not be common to more than two thousand different people. And most importantly, factual issues will certainly not be common to them all. The facts necessary to prove, for example, that Alcoa intentionally inflicted emotional distress on Laurie L.A. Abednego (*see* Proposed Fourth Amend. Compl ¶ 3) will not be the same as the facts proving the same claim for Christine N. Yarwood, individually and on behalf of her minor son, D.J., (*see id.* ¶ 2,033), or for the Estate of Nilsa Gbayor.

█ This is not a class action. The class was decertified. So each plaintiff must give his or her own short and plain statement showing how he or she is entitled to relief. Even though "joinder of claims, parties and remedies is strongly encouraged," *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (internal quotation marks and citation omitted), joinder is

only proper when every one of the plaintiffs' claims for relief arises out of the same transaction and involves common legal or factual questions. *See Cooper v. Fitzgerald*, 266 F.R.D. 86, 88 (E.D. Pa 2010) ("joinder is only appropriate if both elements of Rule 20(a) are met."); *Am. Fid. Fire Ins. Co.*, 407 F. Supp. at 190 ("misjoinder of parties arises when they fail to satisfy any of the conditions of permissive joinder under Rule 20(a)."). Even though all plaintiffs were allegedly affected by the same event, Hurricane Georges, the resulting injuries to each of them and the resulting damages to their separate properties constitute separate "transactions" with separate, rather than "joint, several or alternative," rights to relief for each individual plaintiff. *Accord* 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, *Federal Practice & Procedure* § 1653 (3d ed. 2001) ("Joinder of parties under Rule 20(a) is not unlimited as is true of the joinder of claims under Rule 18(a). The rule imposes two specific requisites to the joinder of parties: (1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence; and (2) some question of law or fact common to all the parties will arise in the action. Both of these requirements must be satisfied in order to sustain party joinder under Rule 20(a)." (footnotes omitted)). ·

Nearly twenty years ago, the Territorial Court of the Virgin Islands rejected a similar attempt by 235 plaintiffs who had joined together to file "a total of 13 cases against 30 defendants," each of which alleged "asbestos-related physical injuries" from "employment at the Hess Oil refinery on St. Croix between the years of 1971 and 1990." *Alexander v. HOVIC*, Civ. No. 323/1997, 1998 V.I. LEXIS 36, *2 (Terr. Ct. Jan. 23, 1998) (unpublished). The court explained that Rule 20, as applied through what was then Territorial Court Rule 7, "provides for joinder when persons assert any right to relief, whether jointly, severally or in the alternative, their cause of action arises out of the same transaction, occurrences, or series of occurrences, *and* a question of fact or law common to all these persons will arise in the action." *Id.* (emphasis in original). Because the plaintiffs' claims in those cases allegedly occurred across a span of nearly twenty years, the court concluded that joinder was improper and "ordered the claims severed" and further directed the plaintiffs "to refile individual [complaints] . . . or face dismissal." *Id.* at *3. Individual complaints were later refiled and then consolidated for pretrial discovery under a master docket, which was captioned *In re*

*Kelvin Manbodh Asbestos Litigation Series.* Although this case is distinguishable from *Alexander*, particularly because most, if not all, of claims here may have arisen around the same time and possibly from the same event, the Court nonetheless finds *Alexander*, and also *Davis*, persuasive in how they remedied misjoinder.

 Even though the complaint, as presently drafted, is inadequate in that it fails to state any plausible claim for relief as to any plaintiff individually, the Court cannot grant the motion to dismiss at this time. Misjoinder is simply not grounds for dismissal. And since "any omission or defect" can be corrected by amendment, SUPER. CT. R. 8, the Court will instead exercise its "broad discretion" and sever the plaintiffs' claims. *Alexander*, 1998 V.I. LEXIS 36 at *3. The plaintiffs will be ordered to refile individual complaints that plead each claim(s) specifically and plausibly and further address whether they were in fact former class members. Immediate family members, meaning persons who are married or presently cohabitating as well as their children, may join together in one pleading, so long as each plaintiff's claims are pled separately and the refiled complaint is verified by each. Additionally, to resolve any further concerns over Attorney Rohn's purported authority, the Court will order that each complaint be verified when refiled.

## C. *Motion to Amend Complaint to Substitute an Estate*

The next motion before the Court is a motion filed by the plaintiffs to request leave to file a fourth amended complaint. The reason for the request is to substitute a personal representative in place of a plaintiff who passed away while this action was pending. None of the defendants have opposed the motion.

 Section 77 of title 5 of the Virgin Islands Code provides that claims for "physical injury to the person or out of a statute imposing liability for such injury" will not abate when a person dies but instead, pursuant to section 37(a) of title 5, will continue for two years after death for "the action to be continued by . . . [her] personal representative," "on motion." Counsel for the plaintiffs filed such a motion on November 21, 2013, requesting that Mary Henry, in her capacity as personal representative for the Estate of Nilsa Gbayor, be substituted in place of Nilsa Henry, who passed away on August 31, 2012. Attached to the November 21, 2013 Motion is a copy of an order issued on August 16, 2013 by a Superior Court magistrate in a miscellaneous probate matter,

*In re Estate of Nilsa Gbayor*, SX-13-MP-010, which granted a petition Mary Henry filed to be appointed as personal representative of the Estate of Nilsa Gbayor. The Court takes judicial notice of this miscellaneous probate matter, including the petition filed July 13, 2013 and amended August 1, 2013, in which Mary Henry specifically agreed to continue her daughter's claims in the *Abednego v. St. Croix Alumina, LLC* litigation and in which she clarified that Nilsa Henry is her daughter's maiden name and Nilsa Gbayor her married name.

Upon consideration of the November 21, 2013 Motion and supporting documentation, the Court finds the motion proper and will grant the request to substitute in place of Plaintiff Nilsa Henry, Mary Henry in her capacity as personal representative of the Estate of Nilsa Gbayor. But the proposed fourth amended complaint the plaintiffs filed will be rejected for the reasons given above, namely that all plaintiffs, including the Estate of Nilsa Gbayor, will have to refile individual complaints.

## D. *Motion to Withdraw as Counsel for Two Plaintiffs*

The final motion before the Court is a motion filed on July 15, 2015 by Attorney Rohn for leave to withdraw as counsel for two of the plaintiffs: Effrail Jones, Sr. individually and in his capacity as father and next of friend to Effrail Jones, Jr. None of the defendants have opposed the motion.

Local Rule of Civil Procedure 5.2, which applies in the Superior Court through Superior Court Rule 7, provides that "[n]o attorney may withdraw an appearance except with leave of Court and after notice to the attorney's client." LRCi 5.2(b). The attorney "should" also include "a verified statement as to contact with or attempts to contact the client concerning such withdrawal and an indication of service upon . . . the client." *Id.*

 In her July 15, 2015 Motion, Attorney Rohn explained that Mr. Jones does not object — and in fact consents to — her withdrawal as counsel for him and his son. She further explained that the attorney-client relationship has broken down and that she has withdrawn in other matters as counsel for Mr. Jones. Additionally, the certificate of service attached to the motion indicates that Attorney Rohn had a copy served on Mr. Jones by process server. The only requirement Attorney Rohn failed to comply with is the requirement of verifying the statements in her

motion concerning contacts with Mr. Jones regarding her withdrawal. However, no court has held that verification is required under Rule 5.2(b), particularly as the rule directs that an attorney's statement concerning withdrawal "should" be verified, not "must" be.

Under the circumstances, the Court will excuse the verification requirement and grant, under separate order, Attorney Rohn's motion to withdraw. But the Court will also make leave to withdraw contingent on her filing proof that a copy of the order was served on Mr. Jones and further certifying in that same notice of proof of service that she (or someone from her office) has explained to Mr. Jones the Court's decision to sever the plaintiffs' claims and to require them to refile individual, verified complaints.

## CONCLUSION

For the reasons given above, the Court will grant the Former Plaintiffs' motion for relief from the District Court's dismissal order, grant in part the plaintiffs' motion to substitute Mary Henry as personal representative for the Estate of Nilsa Gbayor, and grant Attorney Rohn's motion to withdraw as counsel for Effrail Jones, Sr. The Court will deny the Alumina Defendants' motion to dismiss and deny Century Aluminum's motion to dismiss, both without prejudice. But because the Court cannot tell which plaintiffs were former members of the *Henry* class action nor which plaintiffs have stated plausible, individual claims for relief, the Court will sever the claims of all of the plaintiffs (including the Former Plaintiffs, the Estate of Nilsa Gbayor, and Effrail Jones, Sr.) and grant them leave to refile individual, verified complaints. This matter will be stayed for approximately 120 days to allow the plaintiffs time to prepare and file individual complaints. Once individual complaints are refiled the Court will create a master case file and docket to be named *In re: Red Dust Claims* and then consolidate the individual cases under the master docket for further pre-trial proceedings. Appropriate orders follow.